[No. 144. Decided April 7, 1891.]

HENRY S. ALGER v. ALICE S. HILL, *Executrix of W. C. Hill,* AND J. VANCE LEWIS.

PUBLIC LANDS — TOWN SITES — MUNICIPAL INCORPORATIONS — KNOWLEDGE OF ENTRYMAN.

The special act of the territorial legislature of Washington (Laws 1869, p. 437), incorporating the city of Seattle, does not come within the prohibition of the organic act (Rev. St. U. S., § 1889) against granting private charters or special privileges, as such act of incorporation is the grant of a public charter.

Plaintiff's grantor in 1874 pre-empted vacant, unoccupied public lands which had been included in the corporate limits of the city of Seattle in the year 1869 by the act of the territorial legislature incorporating said city, and did not ascertain until after entry that the land was within said corporate limits. The secretary of the

interior, in 1879, canceled the entry, on the ground that, as plaintiff's grantor was at the time marshal of the city of Seattle, he must, by virtue of his office, have known that the land pre-empted was within the corporate limits. *Held*, That the secretary's decision was erroneous, as, under § 2 of the act of congress of March 3, 1877 (19 U. S. St. at Large, 392), confirming entries which, though regular in other respects, had theretofore been allowed upon lands afterward ascertained to have been embraced in the corporate limits of any town, no knowledge of the law or the fact of incorporation can be imputed to the entryman. (HOYT, J., dissents.)

*Appeal from Superior Court, King County.*

The facts are sufficiently stated in the opinion.

*Struve, Haines & McMicken*, for appellant.

*Junius Rochester*, for appellees.

The opinion of the court was delivered by

STILES, J.—This was the usual action to have the patentee of lands from the United States held the trustee of one claiming to have had the equitable title to the land under a prior pre-emption which had been canceled by the department of the interior. The pre-emption declaratory statement was filed June 26, 1874; final proof was made May 4, 1875, and the certificate of entry was issued by the register and receiver on the same day. The entryman was one Minnick, who conveyed the land by deed to the appellant (plaintiff below) a few days later. On the 12th of January, 1877, the commissioner of the general land office, without any notice to the grantee of Minnick, ordered a cancellation of the entry on the records of the general land office, and on the 19th day of March, 1879, the secretary of the interior, on appeal, affirmed the decision of the commissioner and made the cancellation final. The defendants' general demurrer to the complaint was sustained and the action dismissed. Error is assigned upon the judgment against the plaintiff, he having declined to plead further.

The pre-emption entry was canceled because the land was within the boundaries of the city of Seattle, as defined by the act of December 2, 1869, incorporating that city; the secretary of the interior holding that the act of congress of March 3, 1877, did not avail anything to Minnick, who was marshal of the city of Seattle, and by virtue of his office must have known the land in question to be within the city limits.

The defendant's decedent, W. C. Hill, and J. Vance Lewis, in 1880, entered the land with Porterfield scrip, and received patent therefor January 9, 1882. The complaint showed all the facts, and contained these allegations in paragraph 9:

"That after the allowance of said pre-emption entry by said Minnick, it was ascertained by said Minnick and by the said commissioner of the general land office, and by said secretary of the interior, that the same was embraced within the limits of the city of Seattle, as fixed by said legislative assembly, by said void and invalid act approved December 2, 1869, which is hereby referred to, and by such reference is made a part of this complaint, and that thereafter and before the cancellation of said entry by said commissioner and said secretary, it was duly shown to the satisfaction of the said commissioner and said secretary that said entry of said Minnick included only vacant, unoccupied lands of the United States, at the date of the said Minnick's said settlement, nor settled upon or used for any municipal purposes nor devoted to any public use of any town, and that said entry was regular in all other respects."

The first point urged by appellant is, that the act of 1869 was void, because the incorporation of cities and towns was not within the powers conferred upon territorial legislatures, quoting Rev. St. U. S., § 1889, prohibiting the granting of private charters or special privileges. The act of congress, June 8, 1878, limited the construction of § 1889, and under it the supreme court of the territory, in *Seattle v. Yesler*, 1 Wash. T. 571, held that the city of Seattle was

*de jure* a corporation from the date of the incorporation
act in 1869. If, however, the claim of Minnick was car-
ried to entry before the act of 1878, and the territorial act
of incorporation was void, the act of congress could have
had no effect to carry his land within corporate limits which
had theretofore no legal existence so as to deprive him of
rights under the land laws. But we see no reason why the
territorial legislature did not have full liberty and power
to incorporate cities and towns before 1878. Almost every
territorial legislature had assumed that authority, and no
one even questioned it successfully, so far as reported.
To thus incorporate a town or city was not to grant
a "private charter" but a public charter — a means of
assisting the territory to carry on orderly government,
as well as to advance the convenience and interest of a
large body of citizens. The separation of the territory
into counties, townships, school districts and road districts
was an exercise of the same class of powers, which was
universal and was never objected to. The act of congress
of March 3, 1877, hereafter referred to, impliedly recog-
nized these corporations by requiring the secretaries of the
territories to forward such incorporation acts to the sur-
veyors-general.

It remains to consider the effect of the act of March 3,
1877 (19 U. S. St. at Large, 392). Prior to this act the
several pre-emption acts of congress authorized public lands
to be entered and patented by municipal corporations and
incorporated towns, to the extent of not exceeding 2,240
acres, and reserved all lands within the limits of any incor-
porated town from sale under the pre-emption and home-
stead laws. Through the action of the states and territories,
however, the object of the statute, which was to reserve suf-
cient land for town-site purposes, was perverted by in-
cluding areas far beyond the legal limits of town sites in
acts of incorporation. At the same time there was no

statutory machinery by which the land officers could ascertain the lawful areas to which towns were entitled. Consequently settlement was prevented, in many instances, on land which there was no reason for withholding, except the letter of the statute. The act of 1869 included in the limits of Seattle more than ten thousand acres of land and water, some of which was public land; though, as found by the secretary of the interior in *Lewis & Hill v. Seattle*, 8 Copp's L. O. 143, Seattle was wholly located on private land, and was not, therefore, authorized to enter any land. To remedy this state of things congress, in 1877, revised the whole matter and enlarged the actual area which might be reserved to 2,560 acres. But § 3 of the act defines the duties of the land officers in such a way that after that time no person who desires to take up public land can be debarred from doing so very long by reason of over liberal corporation acts where the land is not actually occupied and used for municipal purposes. The municipal authorities can be required upon sixty days' notice to elect where they will have the city boundaries under this act, in compact form, and not including more than 2,560 acres, unless lands in excess of that are actually occupied; and if they do not act, the commissioner may take steps to determine the proper site, and declare all the remaining lands open to entry under the homestead and pre-emption laws. To aid the commissioner in arriving at the actual area included in corporation limits under territorial laws, the secretary of each territory was required to furnish to the surveyor-general a certified copy of every legislative act of incorporation. Thus, from March 3, 1877, a proposing settler upon public land, within the limits of a town incorporated under territorial statutes, if the boundaries exceeded those allowed by the statute of that date, could cause the machinery of the land office to be set in motion, and in due time have his land restored to the public domain and opened to his entry.

Congress was not satisfied, however, with providing for the future, but the second section of the act went back and confirmed all entries which had been heretofore allowed upon lands "afterward ascertained" to have been embraced in the corporate limits of any town, but which entries are or shall be shown to the satisfaction of the commissioner of the general land office to include only vacant, unoccupied lands of the United States, not settled upon or used for municipal purposes, nor devoted to any public use of such town, and which were regular in other respects, and authorized such entries to progress to patent. This curative provision embraced Minnick's entry, unless there was something in the facts which would prevent the act from applying to it. The land officers found that the fact that the land was within the limits of the city of Seattle, under the territorial act of 1869, was not "ascertained" after the date of the entry, May 4, 1875, and therefore the provision of 1877 could not apply, and canceled the entry in 1879. The complaint alleges that this fact was ascertained by Minnick and the land officers after the entry; and this makes the vital issue in this case. The land officers base their findings, not upon proof of the fact that Minnick had knowledge that the city limits included his land, nor upon the presumption that as a citizen of the territory he was presumed to know its public laws, but upon the fact that he was city marshal. The presumption that he would know the law would seem to be the stronger ground, since, although he was the marshal, his duties as a peace officer might never have drawn his attention to the fact that this vacant and unoccupied land was within his jurisdiction. To be elected to an office sometimes has its disadvantages, but we have yet to learn that one of these is to throw the presumption upon the officer of a greater knowledge of the public law than that of any other citizen, especially when the law affects his right to take lands under the pre-emption

statutes. Upon the ground asserted, therefore, the land
officers' decision was erroneous. The territorial statute, on
the other hand, included the land in the city of Seattle;
and if the rule that every one is presumed to know the law
were to have force in this connection, Minnick knew in
1874 that his land was not subject to entry. But upon
such a basis, the act of 1877 could have no effect in any
case, since every entryman of land within an incorporated
town would have had the same presumption against him
from the inception of his claim. The "ascertainment" of
the status of the land would have dated from the passage
of the act of incorporation, so far as the entryman was con-
cerned, and there could be no possible case for the pro-
visions of § 2.

The solution of this difficulty seems reasonably clear.
The land laws of the United States do not depend upon,
or have any connection with, the statutes of the states or
territories. The land department surveys the public lands,
records the surveys upon plats and in field notes, and pre-
pares the way for the settler to deal with the officers. If
at the time of the survey of lands a town is found thereon,
it is noted upon the plats where every one can see, and is
charged with notice of it. If the town springs up after
the plat is filed, and becomes incorporated, at least since
the act of 1877, abundant provisions have existed whereby
the lawful area of the town can be noted and reserved
upon the plats. But the plats on file in the public land
offices, where people resort to find what lands are subject
to entry, unless the municipal authorities have acted in
the matter, show no town-site reservations; and therefore
registers and receivers frequently allowed entries of land
within these legislative limits wherever the conditions were
that the lands were vacant and unoccupied and there were
no adverse claims. *United States v. Schurz,* 102 U. S.
378. In 1877, therefore, this state of things existed. En-

tries had been made, patents in many instances had been issued, in others certificates of entry only had been given, and numerous suits, claims and contests resulted from the loose condition of the laws. Congress, to mend the matter, first validated all entries where any error of law had theretofore occurred, and then provided a means by which such things could not happen thereafter. This was a plain, common sense course. The error made in allowing entries within incorporated towns was that of the government itself, through its officers; but it did no real injury to the government, since the price was the same to the individual or to the town, and the entries confirmed were of vacant, unoccupied lands, wherein the entryman had meritorious claims through having otherwise complied with the law. To the entryman no knowledge of the law or the fact was imputed under this act; and tried by this interpretation, Minnick was entitled to have the benefit of its provision.

We hold, therefore, that the complaint, on the point in controversy, was good, and that the demurrer should have been overruled. Judgment reversed, with instructions to the court to overrule the demurrer and proceed with the cause.

ANDERS, C. J., and DUNBAR and SCOTT, JJ., concur.

HOYT, J. (*dissenting*). — I am unable to agree with the conclusions of the majority of the court as to the effect of the act of March 3, 1877, upon Minnick's entry. I think that it appears from the complaint that the secretary of the interior found as a fact that Minnick had *actual* knowledge that the land in question was within the corporate limits of Seattle at the time he made his entry thereof. And this finding of fact, under the circumstances set up in the complaint, is conclusive upon all parties, and cannot be questioned in the courts. Upon finding this fact of *actual* knowledge by Minnick that the land was not subject to

entry, the secretary of the interior found as a question of law, that his entry was not aided by the said act of 1877. I think that this finding of law was correct. It is not reasonable to suppose that congress by said act intended to aid one who willfully and with full knowledge attempted to acquire title to the land that the law had declared he should not obtain. The statute as construed by the secretary of the interior is a reasonable one, and as thus construed protects every one who had in actual good faith entered land within the limits of any incorporated town. Those who entered in bad faith ought not to be protected. Besides, there is some doubt as to whether or not said curative act applied at all to this entry, for the reason that before it was passed such entry had been ordered canceled by the commissioner of the general land office. In my opinion the judgment should be affirmed.