Appeal from Third District.

SALT LAKE INV. CO. v. OREGON SHORT LINE-R. CO.

No. 2622.   Decided December 1, 1914.   Rehearing Denied May 8,
1915 (148 Pac. 439).

1.  LIMITATION OF ACTIONS—TAKING PROPERTY—ACTION FOR COM-
PENSATION.  An action for compensation for the taking of land,
where the pleadings admitted defendant railroad's entry upon
the land, and its occupation thereof by its railroad tracks with-
out the consent of the plaintiff or any condemnation proceed-
ings, was not governed by Comp. Laws 1907, section 2877
subdiv. 2, relating to actions for waste or trespass to real prop-
erty, nor by section 2883, relating to actions for relief not oth-
erwise provided for, but by section 2860, requiring actions or
defenses founded on realty to be commenced within seven
years.[1]  (Page 207.)

2   EMINENT DOMAIN—ACTION FOR COMPENSATION—WAIVER OF TORTS.
Under the constitutional and statutory provisions requiring
compensation to be first made for private property taken for
public use, the owner of property entered upon and appropriated
to public use without compliance therewith may waive the
tort and sue for compensation.  (Page 207.)

3.  EVIDENCE—OPINION EVIDENCE—MARKET VALUE.  Opinion evi-
dence as to the value of land taken must be restricted to its fair
market value, so that a witness may not give his own opinion as
to value.  (Page 210.)

4.  EVIDENCE—OPINION EVIDENCE—QUALIFICATION—MARKET VALUE.
In an action for compensation for land taken for public use,
a witness for plaintiff who had been in the real estate business
in the locality for twenty years or more, who for fifteen or
eighteen years had been acquainted with land and springs in the
vicinity, who knew of the land and spring in suit, the char-
acter, quality and volume of water, and its situation with re-
spect to other springs, was qualified to express an opinion as to
its market value.  (Page 210.)

5.  APPEAL AND ERROR—REVIEW—NECESSITY OF OBJECTION BELOW.
Where defendant objected to the testimony of an expert wit-
ness on the ground that no proper foundation had been laid and

---

[1]*Stockdale* v. *Railroad,* 28 Utah, 201, 77 Pac. 849; *Morris* v. *Rail-
road,* 36 Utah, 14, 102 Pac. 629; *O'Neill* v. *San Pedro, etc., R. Co.,*
38 Utah, 475, 114 Pac. 127.

that he was not qualified, it could not on appeal claim that the admission of his opinion was erroneous in that he stated his "own opinion" as to value, instead of his opinion as to the market value. (Page 210.)

6. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY CHARGE. In an action for compensation for land taken for public use, any error in permitting a qualified witness to state his own opinion as to the value of the land, instead of his opinion as to its market value, was cured by a charge that the jury might allow the market value of the land at the time it was appropriated and a charge at defendant's request that damages were to be measured by the fair market value and that the verdict could not be based on any expressions of opinion of value unless stated to be of the market value. (Page 211.)

7. EVIDENCE—OPINION EVIDENCE—VALUE. The rule governing the competency of opinions is not so strictly applied to questions of value as to any other subjects, especially where the jury are given the benefit of the facts upon which the opinions are based. (Page 211.)

8. PUBLIC LANDS—GRANTS TO RAILROADS—CONSTRUCTION—"PUBLIC DOMAIN." Rev. St. U. S. section 2258 (Act Sept. 4, 1841, c. 16, 5 Stat. 455), provided that lands included within the limits of any incorporated town or selected as the site of a city or town should not be subject to pre-emption rights. After Salt Lake City's incorporation in 1860 and its laying out wholly upon public lands, the land involved was within its corporate limits, and in 1869 a pre-emption declaratory statement to the land was filed by one to whom patent was issued in 1871, which title by mesne conveyances and a tax sale was acquired by plaintiff. Act Cong. Dec. 15, 1870, c. 2, 16 Stat. 395, granted to defendant's predecessor "a right of way through the public lands * * * 200 feet in width on each side of said railroad where it may pass through the public domain," from a point at or near Ogden City to Salt Lake City, which grant was accepted, and a road constructed, the center of which was within 200 feet of the land. Held, that "public lands," and its equivalent, "public domain," mean such lands as are subject to sale or other disposal under the general laws; that, though the land was within the city limits and not subject to pre-emption rights, yet the ownership was in the federal government, which had the right to sell or dispose of it; and hence that the grant was a grant of public lands, including the land involved.[2] (Page 212.)

²Moon v. Salt Lake City, 27 Utah 435.

9. PUBLIC LANDS—PRE-EMPTIONS—CONSTRUCTION. Act Cong. March 3, 1877, c. 113, 19 Stat. 392, providing that the incorporation of any town upon the public lands should not exclude from pre-emption or homestead entry more than 2,560 acres or the maximum area which may be entered as a town site, unless the entire tract incorporated as such shall include such area and be actually settled and used for business and municipal purposes, and confirming entries upon lands afterwards ascertained to have been within the corporate limits of a town, though only vacant land not settled or used for municipal purposes, was applicable to the city of Salt Lake and to cities and towns laid out exclusively on the public lands, but not to cities laid out mainly on private lands but including public lands, and was intended as a curative act to permit pre-emption entries on public lands though within the corporate limits of a city or town. (Page 212.)

10 COURTS—RULES OF DECISION—PREVIOUS DECISION OF SAME COURT. A decision affirming a judgment is of no controlling force in a subsequent case as to any question involved, but not argued or presented, and left unnoticed or not passed on by the court. (Page 216.)

11. COURTS—RULES OF DECISION—DECISION OF UNITED STATES COURTS —FEDERAL QUESTION. In the construction of the acts of Congress relating to public lands, involving a federal question, the state court should follow the holding of the Supreme Court of the United States. (Page 217.)

12. TAXATION—TAX DEED—TITLE. Where property was not assessed to the defendant or its predecessor, the real owner, but to one not the owner, a sale for taxes and a tax deed conveyed no title and were of no binding effect as against the real owner. (Page 217.)

Appeal from District Court, Third District; Hon. *Geo. G. Armstrong,* Judge.

Action by the Salt Lake Investment Company against the Oregon Short Line Railroad Company to recover compensation for the taking of private property for public use with counterclaim to quiet title.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED, with directions to set aside the judgment, and to enter judgment in favor of the defendant quieting its title.

*P. L. Williams, Geo. H. Smith* and *H. B. Thompson* for appellant.

*M. E. Wilson* and *E. A. Walton* for respondent.

STRAUP, J.

This is an action, as stated by appellant in its brief, "to recover compensation for the taking of private property for public use." It is charged in the complaint: That the plaintiff is the owner and entitled to the possession of the property, fully described, containing about one acre of land situate in Salt Lake City and county. That at the time of the taking there was on the land a flowing spring discharging hot mineral water of the value of $20,000. And "that on or about the 1st day of April, A. D. 1906, the defendant, without right or authority of law, and without instituting any eminent domain or condemnation proceedings, and without the consent of the plaintiff herein, entered upon said land above described and occupied the same, and from time to time proceeded to and did dump great quantities of earth, rock, gravel and other substances upon said land, and constructed upon certain portions of the same its railroad tracks, and proceeded to and did occupy the said land, and still does occupy the same for the purpose of operating its railroad over and upon said land. That in dumping said earth, rock, gravel and other substances upon said land, and in constructing said railroad tracks thereon, and in continuing to occupy the same, as aforesaid, the defendant has absolutely destroyed and prevented the flow of water from said spring, and has absolutely destroyed the existence of said spring in such manner as to cause the waters naturally arising and flowing out of said spring to seek other channels and not to arise upon the aforesaid lands of the plaintiff hereinbefore described. And that in its occupation of said land as aforesaid the defendant has thereby wrongfully appropriated said land to its own use and benefit. And that, by reason of the matters and things herein stated and said wrongs done and committed by the said defendant, plaintiff has been damaged in the sum of $20,000."

The defendant, by its answer, admitted entering upon and taking possession of the land for railroad purposes, at about the time alleged in the complaint, without the consent of the plaintiff and without the institution of eminent domain or condemnation proceedings; and alleged that it continuously and exclusively thereafter occupied, possessed, and used it for such purposes. It denied plaintiff's title and right of possession and alleged the action barred by statute of limitations. It further, by way of counterclaim, pleaded title in itself, and alleged that neither the plaintiff nor its grantor or predecessor was seized or possessed of the premises within seven years before the commencement of the action; and prayed the title quieted in it.

The case was tried to the court and a jury. The court itself, on the evidence adduced, determined and adjudged that the plaintiff, and not the defendant, was the owner of the property at the time of the alleged taking and that the action was not barred. It, upon instructions, submitted the case to the jury to determine "the compensation, if any, the defendant should pay the plaintiff for the tract of land" in controversy. This was the only question submitted to the jury. They rendered a verdict in favor of the plaintiff for $4,000.

The defendant appeals, and urges that the action is barred; that the defendant has, but the plaintiff has not shown title; and that error was committed by permitting certain witnesses to express opinions as to value.

The evidence shows the entry and taking to have been in March or April, 1906. The action was commenced in December, 1912, more than six and less than seven years from the taking. The contention is first made that the action is barred by provisions of Comp. Laws 1907, Section 2877, Subdiv. 2, which provide that "an action for waste or trespass of real property" must be commenced within three years. And, if that section is held not applicable, then the further claim is made that the action is barred by the provisions of    1, 2 Section 2883, which provide that "an action for relief not hereinbefore provided for must be commenced within four years." The complaint is broad enough to recover on the theory stated by the appellant, "compensation for the taking

of private property for public use." The case was tried by
both parties, and was without objection submitted to the
jury, on that theory. The pleadings admit a taking for a
public use and an exclusive and continuous occupation and
possession, without the consent of the plaintiff and without
the institution of eminent domain or condemnation proceed-
ings. We think in such case neither section referred to is ap-
plicable, but that the provisions of Section 2860 requiring
actions or defenses founded on realty to be commenced within
seven years are. By those provisions the action is not barred.
Our Constitution and statute require compensation to be first
made for private property taken for public use; and, where
property is entered upon and appropriated to public use with-
out complying with the law, the owner may waive the tort
and sue for his just compensation. In such case the action
is not barred, except by adverse possession for the required
period, here seven years. 2 Lewis, Em. Domain (3d Ed.),
Sections 889, 967; *Tucker* v. *Chicago, St. P., Minn. & Omaha
R. Co.,* 91 Wis. 576, 65 N. W. 515; *Lehigh Valley R. R. Co.*
v. *McFarlan,* 43 N. J. Law 605; *McFarlan* v. *Morris Canal &
Banking Co.,* 44 N. J. Law 471; *Hannum* v. *Borough of West
Chester,* 63 Pa. 475; *Stauffer* v. *E. Stroudsburg Boro.,* 215 Pa.
143, 64 Atl. 411; *Galway* v. *M. E. R. Co. et al.,* 128 N. Y. 132,
28 N. E. 479, 13 L. R. A. 788; *In re Clark* v. *Water Commis-
sioners,* 148 N. Y. 1, 42 N. E. 414; *Land* v. *Railroad,* 107 N. C.
72, 12 S. E. 125; *Utley* v. *Railroad Co.,* 119 N. C. 720, 25 S. E.
1021.

We see nothing in the cited cases of *Stockdale* v. *Railroad,*
28 Utah 201, 77 Pac. 849, *Morris* v. *Railroad,* 36 Utah 14, 102
Pac. 629, and *O'Neill* v. *San Pedro, etc., R. Co.,* 38 Utah 475,
114 Pac. 127, which makes against this. Contrary holdings
seemingly have been made in other jurisdictions, prominent
among them being California and Michigan. *Robinson* v. *So.
Cal. Ry. Co.,* 129 Cal. 8, 61 Pac. 947; *Williams* v. *So. Pac.
R. Co.,* 150 Cal. 624, 89 Pac. 599; *Wood* v. *Railroad Co.,* 90
Mich. 212, 51 N. W. 265. There it has been held that an action
to recover damages for the wrongful entry and construction
of a railroad without proceedings for condemnation and with-
out the owner's consent is barred by the provisions of the stat-

ute prescribing the time in which an action for trespass to
real property must be commenced, which, in this jurisdiction,
is three years.   We think the former are more in harmony
with legislative intent, and that the statutes applicable to a
recovery such as here—compensation for a taking of real prop-
erty—are those relating to real actions and rights in and to
real property.   It would seem when one, without the consent
of the owner and without legal proceedings or process, enters
upon and takes real property, exclusively occupies and pos-
sesses it as his own, and permanently appropriates it to his
own use and deprives the owner of all rights in or uses to it,
he has done something more than the commission of a mere
trespass; he has unlawfull seized, exclusively possessed, and
permanently taken it.

A witness for the plaintiff, after showing that he had been
in the real estate business at Salt Lake City for twenty years
or more engaged in buying and selling real estate, that for
fifteen or eighteen years he had been acquainted with the land
and spring in question and other lands and springs in that
vicinity that he knew of sales that had been made of lands
upon which were hot springs, and after describing the land
and the spring, the character, quality, and volume of water
discharged from it, and its situation with respect to other
springs, including what is known as Beck's Hot Springs and
the Warm Springs, was asked by plaintiff's counsel:

"I will ask you from your experience and acquaintance
with the land in question, and from lands in and about Salt
Lake City and the real estate market generally you would
have—you could form a somewhat accurate opinion relative to
the value of the land described in the complaint and having
situated thereon this spring that you have described."

This was objected to by the defendant's counsel upon the
ground "that no proper foundation has been laid, it not ap-
pearing that the witness is familiar with any purchases or
sales or values at the time that is material in issue."   The
objection was overruled, and the witness answered, "Yes,
sir."   Then, after further showing by him the beneficial and
commercial uses to which waters of the character of the spring

in question and in that vicinity could be and had been devoted, he was further asked by plaintiff's counsel:

"Taking into consideration the fact that there is about an acre of ground described in this complaint, and that it had situated on it this spring known as the Hobo Spring bubbling forth this flow of water that you have described, I will ask you what that acre of ground, in your opinion, would be worth with the spring flowing thereon as it was prior to its being filled up or covered over by the defendant company?"

This was objected to by the defendant's counsel "as irrelevant, incompetent, immaterial, no proper foundation laid, the witness not qualified." The objection was overruled, and the witness answered: "From $20,000 to $25,000."

It is now here argued that the ruling was erroneous because the witness was asked and permitted to give "his own opinion" as to value, instead of his opinion as to the "market value." In support of that, it is urged that:

"Opinions must be restricted to the fair market value of the land, not the witness' judgment of its value, or its value to the owner. A special value in excess of the market value cannot be shown"—citing 13 Ency. Ev. 487; *Peoria B. & C. Traction Co.* v. *Vance*, 234 Ill. 36, 84 N. E. 607.

The rule as stated may well be conceded; but how about the objection? The rule, of course, is that objections, to be of avail, must be specific. The only specific objection made, and the ground upon which it was claimed in the court below the evidence was not receivable, were that "no proper foundation was laid; the witness not qualified."

A sufficient and proper foundation was laid to qualify the witness to express an opinion as to the market value. There can be no doubt of that. Nor is that objection here pressed, or even argued. But another not specified in the court below is. It may be that the question was improper, not because the witness was not shown to be qualified, that a sufficient foundation had not been laid, but because it was not sufficiently restricted to market value and permitted the witness to give his opinion of value regardless of the market value. *Peoria B. & C. Traction Co.* v. *Vance, supra.*

But, since no such objection was made or specified in the court below, the defendant is in no position to here complain on that ground. It may well be presumed that, had the objection specified the ground here pressed and argued, the question would have been so reframed as to call for an opinion as to the market' value, or, if not, that the ruling would have been different; for, throughout the whole case, as appears by the record, both parties and the court proceeded on the theory that the true measure of compensation was the market value of the land at the time of the taking. Neither party claimed, nor did the court assume, any other or different theory.

Then, too, we think whatever error may have been committed, if any, in this respect was cured by the court's charge. It is charged:

"You are instructed that the issue in this case is as to compensation, if any, that the defendant should pay to the plaintiff for the tract of land described in the pleadings. And in determining such issue the jury is authorized to allow to the plaintiff the market value of said tract of land at the time it was appropriated to its use by the defendant."

And, at the defendant's request, further charged:

"You are instructed that the plaintiff's damages are to be measured on a basis of the fair market value of the property at the time as of which the damages are to be determined, and you cannot base your verdict on any expressions of opinion of value unless such opinions were stated to be of the market value."

And, lastly, the rule governing the competency of opinions is not so strictly applied to questions of value as to many other subjects. *Mobile, etc., R. Co.* v. *Riley,* 119 Ala. 260, 24 South. 858. We think this is especially true where, as here, the jury were so fully given and had the benefit of the facts upon which the opinion of the witness was based. We do not think the ruling harmful. Similar questions were asked other witnesses to which similar objections were made, so what has been said applies also to that.

The plaintiff claims title through a patent from the government to one MacDuff, and through a tax sale and deed; the de-

212        SUPREME COURT OF UTAH.        [May

Salt Lake Inv. Co. v. Oregon Short Line R. Co., 46 Utah 203.

fendant, by a grant from Congress to its predecessor for railroad purposes. In 1860, Salt Lake City was **8, 9** incorporated by an act of the territorial Legislature of Utah, and was laid out on exclusively public lands. Its corporate limits, as then established, embraced the land in question. In 1867, the limits were extended, still embracing the land. Under Sections 2387 to 2390, R. S. U. S. (Act · July 1, 1870, c. 193, 16 St. L. 183), Salt Lake City was authorized to select and enter upon government lands, including the premises in question, for the use of its inhabitants; but it did not exercise that right until in November, 1871, when it made an entry and selection of over 5,700 acres, but not including the land in question. On July 21, 1869, Mac-Duff filed a pre-emption declaratory statement to lands including the property here in question. On June 6, 1871, the government issued a patent to him. By mesne conveyances that title was conveyed to one Joseph Morris in 1890. In 1904 the property, assessed to Morris, was sold to the plaintiff for taxes. On September 22, 1909, a deed, pursuant to the tax sale, was issued and delivered to the plaintiff, and on the 18th of that month Morris and his wife also quit-claimed to the plaintiff. Plaintiff paid all the taxes assessed against the property since 1904.

On December 15, 1870, after the MacDuff entry, but nearly six months before the patent was issued to him and about eleven months before Salt Lake City exercised its right of entry and selection, Congress granted to the Utah Central Railroad Company, for railroad purposes, "a right of way through the public lands   *   *   *   200 feet in width on each side of said railroad where it may pass through the public domain," from a point at or near Ogden City to Salt Lake City, Utah Territory. The grant required acceptance and was accepted in February, 1871, at which time the Utah Central Railroad Company filed with the Secretary of the Interior its articles of incorporation and map showing the route of its road, etc. The land in controversy is within 200 feet of the center of the railroad as constructed by the Utah Central Railroad Company in 1870 and within the route as shown by its map. My mesne conveyances and articles of consolidation

all the right, title and interest of the Utah Central Railroad Company were conveyed to the defendant.

By act of Congress (1841), Section 2258, R. S. U. S. c. 16, 5 St. L. 455, it, among other things, was provided that ''lands included within the limits of any incorporated town, or selected as the site of a city or town,'' and ''lands actually settled and occupied for purposes of trade and business and not for agriculture,'' were not subject to pre-emption rights. It is stipulated that the land in controversy ''has never been actually settled upon, inhabited, improved and used for public and municipal purposes, nor devoted to any public use of the Town of Sale Lake City.'' The lands, when MacDuff made and filed his declaratory statement in 1869, were then within the corporate limits of Salt Lake City, and because of the act just referred to were then not subject to rights of pre-emption. By reason of this, the appellant asserts the MacDuff entry and the patent thereafter issued to him in 1871 are void. To support this it relies on *Burfenning* v. *Chicago, St. P., etc., Ry. Co.*, 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175, and other cases cited in its brief. That case holds that a homestead patent for lands within the corporate limits of the City of Minneapolis was invalid by reason of such provisions. The plaintiff in effect concedes that the MacDuff enery and the patent issued thereon would be invalid were it not for the act of Congress of March 3, 1877, 19 St. L. 392. By that act it is provided:

''The existence or incorporation of any town upon the public lands of the United States shall not be held to exclude from pre-emption or homestead entry a greater quantity than 2,560 acres of land, or the maximum area which may be entered as a town site under existing laws, unless the entire tract claimed or incorporated as such town site shall, including and in excess of the area above specified, be actually settled upon, inhabited, improved and used for business and municipal purposes. * * * Where entries have been heretofore allowed upon lands afterward ascertained to have been embraced in the corporate limits of any town, but which entries are or shall be shown * * * to include only vacant unoccupied lands of the United States not settled upon or used for mu-

nicipal purposes, nor devoted to any public use of such town, said entries, if regular in all respects, are hereby confirmed and may be carried into patent.''

The act has been held applicable to such cities as Salt Lake and other cities and towns, laid out exclusively on the public lands of the United States, and not to such cities as Minneapolis, laid out mostly on private lands, but including lands of the United States. *Houlton* v. *Chicago, St. P., M. & O. R. Co.,* 86 Wis. 59, 56 N. W. 336. Salt Lake City was, and it is general knowledge that other cities and towns of Utah and the West were incorporated and laid out on exclusively public lands covering rather extensive areas, thereby withdrawing the lands embraced therein from pre-emption entry and sale under the general land laws. The authorities hold that it, among other things, was intended by that act to remedy that evil and to permit pre-emption entries to be made on government lands though within the corporate limits of a city or town (*Vilas et ux.* v. *Algar et al.,* 109 Fed. 519, 48 C. C. A. 524; *Alger* v. *Hill,* 2 Wash. 344, 27 Pac. 922), and speak of it in that connection as a curative act. Thus, the further claim is made by the plaintiff that such act operated to confirm such entries as the MacDuff entry and as a ratification of the patent issued thereon. The defendant, however, asserts that Congress having granted its predecessor a present right in and to the lands in December, 1870, at a time when the MacDuff entry was of no effect and before the patent had been issued thereon, to now hold the act of 1877 as confirming or ratifying the MacDuff entry is to divest it of a vested right acquired by it before the act was passed. If the lands were included or embraced within the grant to the defendant's predecessor, then of course the subsequent act of 1877 does not affect it. Whether they were or were not so included is the decisive question. As has been seen, the defendant's predecessor was not granted any specifically described lands. It was granted a right of way through only ''public lands, * * * through the public domain,'' from a point at or near Ogden to Salt Lake City. The plaintiff claims that when that grant was made the lands here were not public lands because they then were within the corporate

limits of Salt Lake City, and subject to selection and entry by that city.

The question as to what lands are public lands within the meaning of grants similar to that under consideration has been before the Supreme Court of the United States in a number of cases. That court, in the case of *U. P. R. R. Co.* v. *Harris,* 215 U. S. 386, 30 Sup. Ct. 138, 54 L. Ed. 246, said:

"The grant of the right of way was 'through the public lands.' What is meant by 'public lands' is well settled. As stated in *Newhall* v. *Sanger,* 92 U. S. 761 (23 L. Ed. 769): 'The words "public lands" are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws' "—citing *Barker* v. *Harvey,* 181 U. S. 481, 21 Sup. Ct. 690, 45 L. Ed. 963, and *Minnesota* v. *Hitchcock,* 185 U. S. 373, 22 Sup. Ct. 650, 46 L. Ed. 954.

See, also, *Bardon* v. *No. Pac. R. Co.,* 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806; *Whitney* v. *Taylor,* 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906; *Nelson* v. *No. Pac. Ry. Co.,* 188 U. S. 108, 23 Sup. Ct. 302, 47 L. Ed. 406.

Though these lands were within the corporate limits of Salt Lake City, still the ownership of them was in the government; and, until they were entered upon and selected by Salt Lake City, Congress had the undoubted right to sell and convey them. 32 Cyc. 841. And if they were in fact granted by Congress to the defendant's predecessor in December, 1870, that ends the inquiry. But here, as in the case of *U. P. R. R.* v. *Harris, supra,* the grant was a right of way only "through the public lands," which the Supreme Court of the United States said meant only such lands "as are subject to sale or other disposal under general laws." How were such lands as these, agricultural lands, subject to sale or other disposal "under general laws"? The plaintiff answers, only under the provisions of the general pre-emption laws; and, as is argued, since they were within the corporate limits of Salt Lake City, and under the provisions of the act of 1841 not subject to pre-emption rights, they therefore were not "subject to sale or other disposal under general laws," and therefore were not public lands, and hence not embraced in the grant to the defendant's predecessor. No other general laws are pointed to under which the lands were subject to sale or other dis-

posal. The defendant does not claim they were sold or conveyed to its predecessor under any general law, but by a special act of Congress.

Plaintiff's conclusion seems plausible, and, though we were inclined to adopt it, yet we are of the opinion that the case of *Moon* v. *Salt Lake City*, 27 Utah 435, 76 Pac. 222, is contrary to such a holding. In that case—a case between different parties—this court, having under consideration the identical grant to the defendant's predecessor, said:

"The fact that the land in controversy was situated within the corporate limits of the city is immaterial, since it then constituted a part of the public domain."

Of course, the term "public domain" is equivalent to the term "public lands." *Barker* v. *Harvey, supra*. It thus was there adjudged that lands similar to these, though within the corporate limits of Salt Lake City and though not subject to pre-emption rights, were nevertheless "a part of the public domain." It, however, is argued that in the Moon Case the parties and the court assumed that the lands there were public lands; and since the judgment was affirmed the case is not a precedent as to that point, citing *Larson* v. *First National Bank*, 66 Neb. 595, 92 N. W. 729; *Bratsch* v. *People*, 195 Ill. 165, 62 N. E. 895.

It is true, as held in those cases, that, as a judgment will not be reversed for errors not presented and not argued, a decision affirming a judgment is of no controlling force in a subsequent case as to any question, though involved, but not argued or presented and left unnoticed or not passed on by the court. While the briefs on file in the Moon Case show that the question of whether the lands there were or were not public lands was not controverted nor argued, yet it seems the point was not "left unnoticed" by the court. It was involved, and while there was not much said about it, and while the opinion in such respect is chiefly devoted to the question of whether the words in the grant·"to Salt Lake City" refer to or embrace lands within the limits of the city, or lands only to the limits of the city, nevertheless the point here under consideration was noticed by the court and was, as we think, decided.

Now, if that holding is in conflict with the holding of the Supreme Court of the United States, it, of course, would be our duty to follow the latter, for the question involves a federal question, the construction of acts of Congress. 11 Cyc. 752. We, however, have not been referred to any decision of the Supreme Court of the United States where, as we think, the point has been directely decided by that court. It is only by analogy, and deductions from language used by that court in the cases referred to, that the claim is made that the land here, being within the corporate limits of the city and subject to entry and selection by that city, were not public lands when the grant was made to the defendant's predecessor. And until the point as to whether such lands are or are not public lands is directly decided by the Supreme Court of the United States we feel bound by the decision of this court. Hence we hold the lands here were public lands when the grant was made to the defendant's predecessor, and hence were included or embraced within that grant.

We are also of the opinion that the plaintiff has shown no title by the tax sale and deed. The property was not assessed to the defendant or its predecessor, the real owner. It was assessed to Morris, who was not the owner. A sale for taxes upon such an assessment, and a deed issued in pursuance thereof, have no binding effect as against the real owner.

Our conclusion therefore is that the defendant, and not the plaintiff, at the commencement of the action and at the time of the alleged taking, was the owner and entitled to the possession of the lands in question, and therefore its motion for a directed verdict in its favor ought to have been granted; and that the court erred in rendering judgment for the plaintiff. The judgment of the court below is reversed; and since the facts respecting title to the lands are not in dispute, and since our ruling is based as it is, upon the grant by Congress to the defendant's predecessor, we see no good to be accomplished by remanding the case for a new trail. It therefore is remanded, with directions to set the judgment aside and to enter a judgment in favor of the defendant quiet-

ing the title in it as prayed in its counterclaim.   Costs to the defendant.

McCARTY, C. J., and FRICK, J., concur.