SALT LAKE INVESTMENT COMPANY v. OREGON
SHORT LINE RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 29. Argued March 8, 1918.—Decided April 15, 1918.

Lands within the limits of an incorporated city, whether actually
occupied or sought to be entered as a townsite or not, were excluded
from acquisition under the Pre-emption Act.

An attempted pre-emption settlement on such land, and filing of declar-
atory statement in the local land office, do not affect the disposing
power of Congress or operate to exclude the tract from subsequent
grant of right of way "through the public lands," containing no
excepting clause.

The Act of March 3, 1877, c. 113, 19 Stat. 392, did not confirm or
provide for confirming such absolutely void pre-emption claims so
as to disturb rights vested before the date of the act under a railroad
right of way grant.

The act granting a right of way "through the public lands" to the
Utah Central Railroad Company (c. 2, 16 Stat. 395,) applied to
public lands over which the road had been constructed within the
corporate limits of Salt Lake City but which never were occupied
as a townsite or attempted to be entered as such. The Townsite
Act is not inconsistent with this conclusion.

46 Utah, 203, affirmed.

THE case is stated in the opinion.

Mr. W. H. King, with whom Mr. M. E. Wilson and
Mr. E. A. Walton were on the briefs, for plaintiff in error.

Mr. Henry W. Clark, with whom Mr. George H. Smith
and Mr. H. B. Thompson were on the brief, for defendant
in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of
the court.

A small parcel of land in Utah is here the subject of
conflicting claims—one under a patent to Malcolm Mac-

duff issued under the pre-emption act, c. 16, 5 Stat. 453, and the other under an act, c. 2, 16 Stat. 395, granting a right of way "through the public lands" to the Utah Central Railroad Company. The court below sustained the latter claim, 46 Utah, 203, and the case is here on a writ of error allowed before the Act of September 6, 1916, c. 448, 39 Stat. 726, became effective.

Macduff's pre-emption claim was initiated by settlement June 10, 1869; his declaratory statement was filed in the local land office July 21 of that year; he paid the purchase price and secured an entry January 19, 1871, and the patent was issued June 6, 1871.

The right of way was granted December 15, 1870. At that time the railroad was completed and in operation for its full length. Cong. Globe, 41st Cong., 2d sess., 4512, 5635; *Moon* v. *Salt Lake County*, 27 Utah, 435, 442. It was constructed late in 1869 or early in 1870, after Macduff filed his declaratory statement and before he paid the purchase price or secured his entry.

Continuously after 1860 the tract sought to be preempted was within the corporate limits of Salt Lake City, as defined by a public statute, but was never actually occupied as a town site nor attempted to be entered as such. The parcel in controversy is within that tract, is also within the exterior lines of the right of way, and is occupied and used for right of way purposes.

The plaintiff in error is the successor in interest and title of Macduff and the defendent in error is the like successor of the Utah Central Railroad Company.

The pre-emption act, § 10, excluded from acquisition thereunder all lands "within the limits of any incorporated town." Thus the land which Macduff sought to pre-empt was not subject to pre-emption, and could no more be entered or acquired in that way than if it were in an Indian or military reservation. See *Wilcox* v. *Jackson*, 13 Pet. 498, 511. That it was not actually occupied as a

town site, nor sought to be entered as such, is immaterial.
As Mr. Justice Miller pointed out in *Root* v. *Shields*, 20
Fed. Cas. 1160, 1166, Congress did not confine the ex-
clusion to such lands as were so occupied, or such as were
subject to town site entry, but "deemed the short way
the best way,—to exclude them all from the operation
of the act by a general rule." In that case the learned
justice held a pre-emption entry of land within the cor-
porate limits of Omaha "illegal and void," and said in
that connection: "Again, the defect in the title was a
legal defect; it was a radical defect. It was as if no entry
had ever been made. By it Shields did not take even an
equity. After he had gone through the process of making
the entry, after he received the patent certificate, Shields
had no more right, or title, or interest in the land than he
had before. And as he had none, he could convey no in-
terest in the land. By the deed which he made, and by
the successive deeds which they received, his grantees
took no more than he had, which was nothing at all."

In the case of *Burfenning* v. *Chicago, St. Paul, Minne-
apolis & Omaha Ry. Co.*, 163 U. S. 321, a plaintiff in eject-
ment relied on a patent issued under the homestead law,
which adopted the excluding provision of the pre-emption
act, and his title was challenged on the ground that the
entry and patent were for land within the corporate limits
of Minneapolis. This court observing, first, that the
record affirmatively disclosed that the land was in the
city limits when the claim was initiated, and second, that
the case was not one where a finding by the Land De-
partment on a question of fact resting on parol evidence
was sought to be drawn in question, held the patent void
under the general rule that "when, by act of Congress
a tract of land has been reserved from homestead and
pre-emption, or dedicated to any special purpose, pro-
ceedings in the Land Department in defiance of such
reservation or dedication, although culminating in a

patent, transfer no title, and may be challenged in an action at law."

Applying these views, we think Macduff's settlement and declaratory statement under the pre-emption act were of no effect. They neither conferred any right on him nor took any from the Government. His claim was not merely irregular or imperfect, but was an impossible one under the law, and so the status of the land was not affected thereby. The land continued to be subject to the disposal of Congress and came within the terms of the right of way act as much as if he were making no claim to it. Of course, the presence on public land of a mere squatter does not except it from the operation of such an act containing, as here, no excepting clause.

It is said that by the Act of March 3, 1877, c. 113, 19 Stat. 392, Congress confirmed or provided for the confirmation of pre-emption claims such as this. Assuming, without so deciding, that the act is susceptible of this interpretation, we think it does not disturb rights which were conferred and became vested under the right of way act more than six years before.

It seems also to be thought that the town site law in some way prevented the right of way act from reaching public land within the city limits, but on examining both statutes we are persuaded there is no basis for so thinking. Certainly it was not intended that the right of way should stop at the city limits, and, as the town site law interposed no obstacle, we think the right of way act was intended to and did apply to the public land lying inside those limits over which the railroad had been constructed.

*Judgment affirmed.*