STATE of North Dakota, Plaintiff and Appellee,

v.

Roger SCHIMMEL, Defendant and Appellant.

Cr. No. 1182.

Supreme Court of North Dakota.

June 30, 1987.

---

James Twomey, Asst. State's Atty., Fargo, for plaintiff and appellee.

William Kirschner & Associates, Fargo, for defendant and appellant.

GIERKE, Justice.

Roger Schimmel (Schimmel) appeals his jury trial conviction for driving a vehicle upon a highway with a blood-alcohol concentration of at least ten one-hundredths of one percent (.10%) by weight at the time of the performance of a chemical test and within two hours after driving, a violation of § 39–08–01(1)(a), N.D.C.C. We affirm.

Schimmel alleges three errors occurred during his trial which mandate a reversal of his conviction and new trial. Schimmel asserts: (1) that the trial court erred in admitting into evidence testimony pertaining to an on-site A.L.E.R.T. chemical screening test proffered by the State of North Dakota; (2) that the trial court's reprimand of Schimmel's wife during his testimony at trial was unduly prejudicial; and (3) that improper comments made by the state's attorney during closing argument denied him of a fair trial.

Initially, Schimmel contends that because the probable cause leading to his arrest was never an issue at trial, the trial court erroneously admitted testimony into evidence surrounding his submission to an A.L.E.R.T. chemical screening test.[1]

1. The A.L.E.R.T. (Alcohol Level Evaluation Roadside Tester) chemical screening test involves the use of a portable, automatic electronic alcohol breath tester which has been approved by the State toxicologist for assisting law enforcement officers when determining if probable cause exists for a d.u.i. arrest. Section 39–20–14, N.D.C.C. The approved method for operating the A.L.E.R.T. instrument is on file with the clerks of district court and the North Dakota State Highway Commissioner. Section 39–20–07, N.D.C.C.

The A.L.E.R.T. instrument was developed by the Borg-Warner Corporation of Des Plains, Illinois and is sold and serviced by an arm of that corporation, Counter-Measure Systems Department. *See* Erwin, 2 *Defense of Drunk Driving Cases* § 24.11 (3d ed. 1987). The A.L.E.R.T. unit is a completely portable and automatic alcohol breath testing system for use by law enforcement agencies. *Id.* The A.L.E.R.T. test is designed for pre-arrest screening tests as *an arrest decision-making tool for roadside agents* and indicates the results of a breath test on a "Pass-Warn-Fail" basis. *Id.*

The ethanol sensor used in the A.L.E.R.T. instrument is manufactured by Taguchi Gas-Electric Transducer (TGS). Quoting from its brochure, the manufacturer of the ethanol sensor, Taguchi, states:

"The characteristics of the TGS are not at present sufficiently reproducible to make it suitable for use in laboratory or analytical instruments *where high accuracy is required:* Still, the TGS has found wide acceptance for use in gas-leak detectors, alcohol detectors, automatic ventilation and fire alarms."

*Quoted in* Erwin, 2 *Defense of Drunk Driving Cases* § 24.11 (3d ed. 1987) (emphasis added).

As the manufacturer clearly reveals, the A.L.E.R.T. unit's response is not specific for ethanol and could possibly emit a "Fail" signal due to the presence of some other chemical substance. While a quick and convenient tool for establishing probable cause for an arrest, the A.L.E.R.T. screening test can be unreliable. Not only can the test register an inaccurate percentage of alcohol present in the breath, it may also be inaccurate as to the presence or absence of any alcohol at all. *See State v. Deshaw*, 404 N.W.2d 156, 158 (Iowa 1987). Therefore, because of the questionable accuracy of the A.L.E.R.T. testing instrument, it lacks the indicia of scientific reliability necessary to provide an evidentiary basis for establishing that an individual was driving in violation of § 39–08–01, N.D.C.C. Thus, it is relegated for use as a screening test to aid law enforcement officers in determining whether or not further tests shall be given and ensuring that sufficient probable cause exists to warrant an arrest for driving under the influence of alcohol. Section 39–20–14, N.D.C.C.; *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739, 745 (N.D.1980). *See* Erwin, 2 *Defense of Drunk Driving Cases* § 24.11(1) for a

Schimmel attempted to suppress the A.L.E.R.T. test evidence at a pretrial hearing and objected to its admission again at trial. The trial court admitted the A.L.E.R.T. test evidence over Schimmel's objections. Schimmel argues that admission of the A.L.E.R.T. screening test evidence is precluded by § 39-20-14, N.D.C.C., when "probable cause" for arresting the defendant is not an issue at trial. We agree.

Section 39-20-14, N.D.C.C., provides:

"*Screening tests.* Any person who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the person's breath for the purpose of estimating the alcohol content of the person's blood upon the request of a law enforcement officer who has reason to believe that the person committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol. A person may not be required to submit to a screening test or tests of breath while at a hospital as a patient if the medical practitioner in immediate charge of the person's case is not first notified of the proposal to make the requirement, or objects to the test or tests on the ground that such would be prejudicial to the proper care or treatment of the patient. The screening test or tests shall be performed by an enforcement officer certified as a chemical test operator by the state toxicologist and according to methods and with devices approved by the state toxicologist. *The results of such screening test shall be used only for determining whether or not a further test shall be given under the provisions of section 39-20-01.* The officer shall inform the person that refusal of the person to submit to a screening test will result in a revocation for up to three years of that person's driving privileges. If such person refuses to submit to such screening test or

tests, none shall be given, but such refusal shall be sufficient cause to revoke such person's license or permit to drive in the same manner as provided in section 39-20-04, and a hearing as provided in section 39-20-05 and a judicial review as provided in section 39-20-06 shall be available. No provisions of this section shall supersede any provisions of chapter 39-20, nor shall any provision of chapter 39-20 be construed to supersede this section except as provided herein. For the purposes of this section, 'chemical test operator' means a person certified by the state toxicologist as qualified to perform analysis for alcohol in a person's blood, breath, saliva, or urine." [Emphasis added.]

Schimmel contends that pursuant to § 39-20-14, N.D.C.C., and in accordance with this Court's holding in *Asbridge v. North Dakota State Highway Commissioner,* 291 N.W.2d 739 (N.D.1980), on-site chemical screening tests are permitted under the implied consent law only to ensure that probable cause exists which warrants the arrest of an individual for driving under the influence of intoxicating alcohol. *Asbridge* at 745.

The State counters that it was not error to admit the arresting officer's testimony regarding Schimmel's A.L.E.R.T. test because it was used for the purpose of explaining the officer's reasonableness in arresting Schimmel. In other words, while conceding that the A.L.E.R.T. chemical screening test is admissible only to the issue of probable cause (which was not contested by Schimmel in the instant case and, in any case, is not a proper jury inquiry), the State argues that the arresting officer's testimony on the screening test was admissible for the practical consideration "of the fairness of the actions of the police officer" leading up to Schimmel's arrest.

At trial, over Schimmel's objection, the county court admitted the evidence of the A.L.E.R.T. screening test, and Schimmel's failure thereof, which was elicited by the State through the testimony of the arrest-

discussion of studies done in evaluating the ac-
curacy of the A.L.E.R.T. breath testing unit.

ing officer. Schimmel asserts that the trial court erred in admitting the A.L.E.R.T. test results because probable cause for his arrest was never an issue at the trial. So prejudicial was the admission of this evidence, Schimmel argues, that it constituted reversible error and he should be granted a new trial.

Evidence is admissible if it is relevant. Rule 402, N.D.R.Ev. Relevant evidence is evidence having any tendency to make the existence of any fact at issue to the determination of the action more probable or less probable than it would have been without the evidence. Rule 401, N.D.R.Ev. *State v. Hendrickson*, 240 N.W.2d 846, 851 (N.D.1976). Evidence that is not relevant is not admissible. Rule 402, N.D.R.Ev. Whether or not evidence is relevant is a matter to be determined by the trial court. Rule 104(a), N.D.R.Ev. The trial court may have determined that the evidence of the A.L.E.R.T. test administered to Schimmel was relevant to an issue at trial. However, by statute, the only permissible purpose for using the results of an on-site chemical screening test is to determine whether or not a further test should be given.[2] Section 39–20–14, N.D.C.C. The A.L.E.R.T. chemical screening test assists the law enforcement officer in establishing that probable cause exists which warrants an arrest for driving under the influence of intoxicating liquor. *Asbridge* at 745. "The ALERT instrument ... is an acceptable roadside screening device in North Dakota designed to assist law enforcement officers *in determining if probable cause exists for a DUI arrest.* The implied consent statute ... applies to such devices, but *their results are otherwise inadmissible into evidence."* Quick, *"I Only Had 2 Beers!": A North Dakota Prosecutor's Manual for DUI Cases*, 55–56 (Dec. 1984, rev. Oct.1986) (Emphasis added.)

■ The A.L.E.R.T. chemical screening test results should not have been presented to the jury since probable cause was not an issue at trial. This is especially true in light of the fact that the State had already elicited evidence surrounding the arresting officer's original stop of Schimmel for driving at night without his headlights and Schimmel's failure to pass two on-site field tests. Accordingly, it was error for the trial court to admit testimony regarding Schimmel's A.L.E.R.T. screening test into evidence.

■ When error occurs during a trial, our objective when reviewing its effect is to determine whether the error was so prejudicial that substantial injury occurred and a different decision would have resulted without the error. *State v. Micko*, 393 N.W.2d 741, 746 (N.D.1986). If no prejudice resulted, the error is considered harmless and shall be disregarded. Rule 52(a), N.D.R.Crim.P.; *Micko* at 746. After reviewing the record in this case, we find that the admission of the A.L.E.R.T. on-site chemical screening test did not affect the decision of the jury and is harmless error. We make this determination for two reasons.

Initially, we point out that Schimmel was arrested for driving with a blood-alcohol concentration of at least ten one-hundredths of one percent (.10%) by weight at the time of the performance of a chemical test and within two hours after driving, in violation of § 39–08–01, N.D.C.C. Evidence presented to the jury revealed that Schimmel was given two blood-alcohol tests, both of which revealed results above .10%. In light of the two blood-alcohol tests presented to the jury, the prejudicial effect of the A.L.E.R.T. screening test results is negligible. *But cf. State v. Deshaw*, 404 N.W.2d 156 (Iowa 1987) (holding that the admission of testimony by a police officer revealing that a preliminary screening test of defendant's breath indicated the presence of alcohol was reversi-

---

**2.** The State does not raise the issue that the Legislature, through § 39–20–14, N.D.C.C., has improperly invaded a traditional province of the judiciary, i.e., determining the admissibility of evidence. Rule 104(a), N.D.R.Ev.; *see also* N.D. Const. art. VI, § 3. This issue raises a plethora of questions about § 39–20–14, N.D.C.C., and screening tests which exceed the scope of this appeal and must await determination on another day. *But see* 901(b)(10), N.D.R.Ev.; *State v. Vetsch*, 368 N.W.2d 547 (N.D.1985).

ble error where the defendant was convicted of operating a motor vehicle while under the influence of alcohol).

Additionally, the trial court included a cautionary instruction in its jury instructions explaining that the only purpose of the A.L.E.R.T. test evidence was to allow the jury to fully understand the events surrounding Schimmel's arrest. The jury was cautioned that the A.L.E.R.T. test result was not to be used in their determination of Schimmel's blood-alcohol concentration. We reiterate that the A.L.E.R.T. screening test result was not properly presented to the jury, but have determined that under the weight of the evidence presented to the jury, coupled with the trial court's cautionary jury instruction, this error was harmless and does not constitute a ground for reversing Schimmel's conviction.

We next turn to Schimmel's contention that the trial court's admonition of his wife during the trial prejudiced the trial and, therefore, his conviction should be reversed. Apparently, during the course of Schimmel's testimony, Mrs. Schimmel was making gestures and helping Schimmel answer questions while on the stand by shaking her head and mouthing answers to him. Schimmel would watch his wife and then qualify or change the answer he had previously given in accordance with the hints received from her. After observing Mrs. Schimmel gesture to her husband, the trial court admonished her through the following exchange:

"THE COURT: Excuse me, I'm going to caution another spectator in the courtroom. It appears that the spectator is making some kinds of hints to the person who's testifying. The information has to come from Mr. Schimmel. If you disagree or if he isn't testifying correctly, Ma'am, you can't shake your head or give him any hints. I'm sorry, but that's the way it has to be so please don't do that. If—

"MRS. ROGER SCHIMMEL: I didn't realize that I was doing it.

"THE COURT: I noted that you were doing that, and he seemed to be watching you. So you're not to testify on his behalf or give him any help, okay? Thank you.

"Mr. Kirschner, if you'll continue. I'm sorry I interrupted, but I needed to clarify that."

Schimmel's counsel immediately moved for a mistrial based on the colloquy that took place, claiming that the trial court's admonition of Mrs. Schimmel prejudicially affected Schimmel's credibility and veracity before the jury. Schimmel's motion was denied.

■■■ Granting a mistrial is an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings that makes it evident that further proceedings would be productive of manifest injustice. *State v. Carr*, 346 N.W.2d 723, 725 (N.D.1984). Schimmel asserts that the trial court's reprimand of his wife from the bench is a defect which so prejudiced the trial that further proceedings were productive of manifest injustice and, therefore, his conviction should be reversed and the case remanded for a new trial. We disagree.

■■■ The trial court is charged with maintaining decorum in the courtroom so that the integrity and independence of the judiciary is preserved. *See,* Rule 10.1(b), N.D.R.O.C.; Rule 3(A)(2), North Dakota Rules of Judicial Conduct. While the trial court shall be patient, dignified, and courteous to those with whom it deals, it also must maintain reasonable control over the mode of interrogating witnesses in order to ensure ascertainment of the truth. Rule 3(A)(3), North Dakota Rules of Judicial Conduct; Rule 611(a), N.D.R.Ev.; *State v. Jenkins*, 326 N.W.2d 67, 70 (N.D.1982). In the instant case, the trial court asked an individual in the gallery to refrain from supplying answers to the defendant, who had taken the stand and who was testifying under oath. Therefore, although we agree with the trial court in her assessment that, "[p]erhaps there would have been a better or more appropriate way to take care of [the problem]", we do not believe that the trial court's admonition of Mrs. Schimmel

is the type of conduct or occurrence which was productive of manifest injustice.

Schimmel's final contention is that the trial court abused its discretion by permitting the state's attorney to exceed the proper scope of closing argument. Specifically, Schimmel alleges that the state's attorney improperly commented on the social status and wealth of Schimmel and prejudicially interjected his personal belief about what the evidence in the trial revealed. Schimmel made a motion for mistrial and then entered a standing objection to the state's attorney's closing statement. On appeal, Schimmel asserts that the trial court abused its discretion by failing to keep the state's attorney's closing argument within appropriate bounds.

A review of the record in the instant case reveals that throughout the trial, defense counsel attempted to portray Schimmel as a simple, unsophisticated man who did not possess much in the way of wealth and who, in driving his wife to Fargo for a doctor's visit from Balta, North Dakota, their home town, experienced a very trying day. Schimmel's day consisted of a twelve-hour drive from Balta to Fargo, a flat tire along the way and, upon his arrival, getting lost in Fargo for over two hours. The culmination of Schimmel's odyssey was being arrested, and then jailed, for driving under the influence of intoxicating liquor. Evidence pertaining to the Schimmel's wealth included reference to the fact that he could not afford to buy a new tire for his car after the flat he encountered on the drive to Fargo, as well as testimony that the fine he would incur as a result of a conviction for d.u.i. would be an undue financial hardship on his family.

The State did not object to any of the testimony respecting Schimmel's lack of financial means or offer any rebuttal to defense counsel's tactics, except in closing argument. In his closing argument, the state's attorney commented:

"But what does that do? What does all that evidence do? Perhaps they were at the bar a lot longer than they say they were, but they have to have some reason to cut down the length of time at the bar.

Not by five hours or six hours, but what if they arrived at the bar at 7:00 or 7:30 or 8:00 and spent time at the bar, even from 8:00 until 1 o'clock, at two bars doing pull tabs. *Perhaps they don't have enough money to buy a tire but yet spending money on pull tabs. Maybe that's an indication of their concern for money* but being at the bar for three hours or four hours is long enough to consume—what's the ultimate that the attorney for the defendant said—eight beers? nine beers." [Emphasis added.]

In addition to this statement about Schimmel's financial status, Schimmel alleges that the state's attorney expressed his personal opinion on the evidence and Schimmel's guilt to the jury by saying:

"The evidence in this case, ladies and gentlemen, certainly shows that the defendant's blood alcohol concentration within two hours of his driving was over the legal limit of .10. *I don't think there's much doubt about that at all.* The question—

"MR. KIRSCHNER: Your Honor, I'm going to object as to the expression of the personal opinion as to what the evidence shows. I believe that that's improper, Your Honor, and we would at this time move for a mistrial.

"THE COURT: The Court is going to deny the motion for a mistrial. Your objection is noted for the record, Mr. Kirschner. Mr. Twomey?

"MR. TWOMEY: Thank you, Your Honor. *I don't think—I think that in looking at the evidence, ladies and gentlemen, it can lead you to know (sic) other conclusions with regard to the testing that the defendant had a blood alcohol concentration over the legal limit and that he was driving. I believe* that a review of the evidence in this case—" (whereupon defense counsel interjected his standing objection to the state's attorney's closing argument). (Emphasis added.)

On appeal, Schimmel asserts that the trial court abused its discretion by failing to properly control closing argument and by permitting these comments made by the

state's attorney in closing argument, to go to the jury. Schimmel argues that the trial court's failure to control the State's closing argument constituted an abuse of discretion because the alleged improper comments were so prejudicial that he was denied a fair trial. Schimmel asks this Court to reverse his conviction and remand for a new trial.

The control and scope of opening and closing arguments is largely a matter left to the discretion of the trial court, and a case will not be reversed on the ground that the prosecutor exceeded the scope of permissible closing argument unless a clear abuse of discretion is shown. *State v. Mehralian*, 301 N.W.2d 409, 418 (N.D. 1981). Along with discretionary control over the scope of the arguments, the trial court maintains control over the substance and vigor of the lawyers' opening and closing statements. *Mehralian* at 418; *State v. Skjonsby*, 319 N.W.2d 764, 795 (N.D. 1982). To establish an abuse of discretion, absent a fundamental error (e.g., commenting on the defendant's decision not to testify at trial), the defendant must demonstrate that the prosecution's comments in closing argument were improper and prejudicial. *State v. Drader*, 374 N.W.2d 601, 602 (N.D.1985). In the instant action, we do not believe that the statements made in closing argument by the state's attorney were improper and prejudicial and, therefore, find no abuse of discretion.

Under our adversary system, a prosecuting attorney must necessarily walk a line between his duty to prosecute with earnestness and vigor and to refrain from improper methods calculated to produce a wrongful conviction. *Kittler v. Kelsch*, 56 N.D. 227, 237–244, 216 N.W. 898, 899 (1927); *Hennebry v. Hoy*, 343 N.W.2d 87, 90–91 (N.D.1983); *see also, United States v. Young*, 470 U.S. 1, 7, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1, 7 (1985); *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935). Admittedly, this line falls within a huge gray area, separating acceptable from improper advocacy, and the determination of conduct which is not proper is, at best, a difficult assessment to make. *United States v. Young*,

105 S.Ct. at 1042. In the heat of argument, trial counsel do occasionally make remarks that are not justified by the evidence, and which are, or may be, prejudicial to the accused. *Young* at 1044. "Of course, 'hard blows' cannot be avoided in criminal trials; both the prosecutor and defense counsel must be kept within appropriate bounds." *Young, supra.*

■ It is the responsibility of the trial court to maintain decorum in keeping with the nature of the proceedings and cope with the contingencies of the adversarial process as they arise. *State v. Mehralian*, 301 N.W.2d 409, 418 (N.D.1981); *State v. Skjonsby*, 319 N.W.2d 764, 795 (N.D.1982); *Young*, 105 S.Ct. at 1044. The trial court must discourage inappropriate attorney argument by prompt action from the bench in the form of corrective instructions to the jury and when mandated, an admonition to the errant advocate. *Young, supra,* at 1045.

■ The state's attorney's comments about Schimmel's economic status and wealth were clearly in response to defense counsel's portrayal of Schimmel as a simple, unsophisticated man without much in the way of money. Because Schimmel invited this response by the state's attorney, he may not argue that these comments deprived him of a fair trial. *See, e.g., Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Young, supra,* at 1044–45. To be prejudicial, absent a fundamental error, improper closing argument by the state's attorney must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence. *State v. Loyland*, 149 N.W.2d 713, 731 (N.D.1967). "He is allowed a wide latitude of speech, and must be protected therein. He has a right to be heard before the jury upon every question of fact in the case, and in such decorous manner as his judgment dictates. It is his duty to use all the convincing power of which he has command, and the weapons of wit and satire and of ridicule are all avail-

able to him so long as he keeps within the record." *Loyland, supra,* at 731, *quoting from State v. Gibson,* 69 N.D. 70, 103, 284 N.W. 209, 225 (1939). Therefore, because Schimmel invited the state's attorney's argument, we do not believe that the comments by the state's attorney about Schimmel's economic means were improper and Schimmel was not prejudiced by them.

We now turn to the prosecuting attorney's comments in regard to his personal belief about the evidence submitted to the jury at trial. When a prosecuting attorney allegedly makes improper argument to a jury, we have three concerns when reviewing those statements, especially when those comments assert a personal belief or confidence in the evidence.

▇ Initially, we point out that it is the jury who is the trier of fact in any court proceedings. When the state's attorney comments personally on the evidence, he is acting as an unsworn witness for the prosecution who is not subject to cross-examination and who may be perceived as an expert witness testifying about scientific evidence. Additionally, we are concerned that personal comments made by the state's attorney may convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant. *United States v. Young,* 105 S.Ct. at 1048. Our final concern is that the prosecutor's opinion carries with it the "imprimatur of the Government." *Young, supra.* Improper argument by the state's attorney may induce the jury to trust the government's view rather than its own judgment of the evidence when deliberating. *Young, supra; Berger v. United States,* 55 S.Ct. at 633. Correspondingly, the prosecution's improper suggestions, insinuations and assertions of personal knowledge distort the fundamental guarantee of a fair trial by placing the great weight and presence of the government on the side of the prosecutor, who is not the representative of an ordinary party but of the sovereignty, whose obligation is not only to govern but to govern impartially. *Berger, supra.* The sovereign's interest in a criminal prosecution is not to win at all costs but to see that justice is done.

▇ In this case, we do not believe that the state's attorney impermissibly expressed his personal beliefs and conclusions about the evidence regarding the blood alcohol testing procedures and test results. The state's attorney was arguing that the evidence revealed that Schimmel was driving with a blood-alcohol concentration of at least ten one-hundredths of one percent (.10%) by weight at the time of the performance of a chemical test and within two hours after driving. The prosecutor did not invoke the imprimatur of the government on his behalf, he merely pointed out his opinion that the evidence revealed that Schimmel was guilty of driving with a blood-alcohol concentration of .10%. We do not believe that the state's attorney's comments were an improper assertion of personal belief in the truth or falsity of the evidence of the guilt of Schimmel. Additionally, in her charge to the jury, the county court judge instructed them that argument and other remarks made by an attorney are not to be considered as evidence in their deliberation. The prejudice, if any, that resulted from the prosecutor's closing argument was minimized by this cautionary instruction by the trial court. Therefore, we fail to see how Schimmel was prejudiced by this argument and find that the trial court did not abuse its discretion by permitting this argument by the state's attorney.

In closing, we note that Schimmel argues that the State's closing argument was patently prejudicial because he allegedly violated the North Dakota Code of Professional Responsibility in expressing his personal opinion of the evidence and commenting on Schimmel's economic status.[3] We point out

---

3. Specifically, Schimmel argues that the state's attorney violated Disciplinary Rule 7–106, North Dakota Code of Professional Responsibility. This disciplinary rule applies to *all* attorneys and provides, in relevant part:

"DR 7–106 Trial Conduct.

\*　\*　\*　\*　\*　\*

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

\*　\*　\*　\*　\*　\*

that the purpose of the Code of Professional Responsibility is to act as both an inspirational guide for the members of the legal profession and as a basis for disciplinary action when the conduct of a lawyer falls below the minimum standards presented by the code. We find that Schimmel's contention in this regard is without merit.

Affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein." [Footnotes omitted].

A corresponding provision in the North Dakota Rules of Professional Conduct, which becomes effective January 1, 1988, states:

"*RULE 3.4 Fairness to Opposing Party and Counsel*
A lawyer shall not:
*       *       *       *       *       *

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; ..."