SALT LAKE & U. R. CO. v. SCHRAMM et al.

No. 3431. Decided March 31, 1920. (189 Pac. 90.)

1. EMINENT DOMAIN—IN ACTION TO CONDEMN LANDS FOR RAILROAD, PRIOR DAMAGES CANNOT BE RECOVERED UNDER COUNTERCLAIM. In a condemnation action, the owner cannot by way of counterclaim recover damages for injuries to the property occurring before the taking; such injuries not constituting a legal defense or meeting the requirements of the counterclaim statute (Comp. Laws 1917, section 6576).

2. EMINENT DOMAIN—PARTY DESIRING MORE SPECIFIC INSTRUCTIONS AS TO EVIDENCE MUST REQUEST THEM. In action by railroad company to condemn land, where defendant's counterclaim for damages caused previous to the taking was dismissed, and the court charged that the only question was the market value of the land, plaintiff, not having requested specific instructions that the evidence admitted on the counterclaim could not be considered, cannot on appeal complain that the court did not so charge, for under Comp. Laws 1917, section 6803, a party, if desiring more specific instructions than those given, should request them.

3. EVIDENCE—NO EXACT RULE AS TO QUALIFICATIONS OF WITNESS AS TO VALUE, BUT GROUNDS FOR OPINION MUST BE STATED. Whether a witness is qualified to give opinion as to value in an eminent domain proceeding is a question to be largely determined by the

trial judge, as no exact rule on the subject can be formulated, and if under all the circumstances the witness was in a position to obtain knowledge and form a correct judgment as to values, it is immaterial how the witness obtained his knowledge, provided the jury is given benefit of the facts on which the opinion is based.[1]

4.  EVIDENCE—OWNER MAY GIVE OPINION EVIDENCE AS TO VALUE OF CONDEMNED REAL ESTATE. In an eminent domain case, where one of the owners testified that she had resided on the premises all her life, and had made frequent inquiries into the value of such property, it was not improper for the trial court to allow her to give opinion evidence as to value, and qualifications might be tested on cross-examination.

5.  EMINENT DOMAIN—AWARD OF DAMAGES NOT EXCESSIVE. A verdict for $4,000 in favor of property owners whose lands were taken by railroad company cannot be deemed excessive, though it was much in excess of estimates of value placed on the property by the condemnor's witnesses; the award being less than the value of the property fixed by the owner's witnesses.

6.  EMINENT DOMAIN—INSTRUCTION AS TO VALUE HELD CORRECT IN PROCEEDING TO CONDEMN LAND FOR RAILROAD. An instruction that the market value was the price a party who wanted to buy would give in cash for the most advantageous and valuable use, excluding, however, the value of the property for railroad purposes, was not improper, although the instruction requested by the condemning railroad company, that market value was the price property would bring when offered for sale by one who desired, but was not obliged to sell, and is bought by one who is under no necessity of buying it, was preferable.

7.  EMINENT DOMAIN—INSTRUCTION ALLOWING CONSIDERATION OF EXISTING BUSINESS WANTS IN FIXING DAMAGES NOT ERRONEOUS. In an eminent domain case, where there was testimony that the land taken was in a city of several thousand people, surrounded by valuable agriculture districts capable of supporting manufacturing and business enterprises, an instruction allowing the jury to take into consideration the existing business wants of the community was not improper, as without supporting evidence.

8.  EMINENT DOMAIN—INTEREST ON AWARD CAN BE ALLOWED ONLY FROM DATE OF OCCUPANCY. Interest on an award of damages in an eminent proceeding can be allowed only from the date of occupancy.[2]

---

[1] *Salt Lake Inv. Co.* v. *O. S. L. R. Co.*, 46 Utah, 203, 148 Pac. 439.
[2] *Oregon S. L. R. Co.* v. *Jones*, 29 Utah, 147, 80 Pac. 732.

Appeal from District Court, Fourth District, Utah County; *A. B. Morgan,* Judge.

Action by the Salt Lake & Utah Railroad Company against Elizabeth Dolder Schramm and others for condemnation of property.

From a judgment of condemnation and for damages in favor of the defendant owners, plaintiff appeals, and defendants cross-appeal.

MODIFIED, AND, AS MODIFIED, AFFIRMED.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for appellant.

*Stott & Warner,* of Salt Lake City, for respondents.

CORFMAN, C. J.

Plaintiff, a railroad corporation, commenced this action in the usual form under our statutes to condemn for railroad purposes certain real property situate in the city of Payson, Utah county. The defendants answered, admitting the allegations of the complaint, except that a taking of the property was necessary for plaintiff's use. It was alleged in the answer by way of a counterclaim against the plaintiff that prior to the commencement of the action the defendants had sustained certain damages to the real property sought to be condemned, and that they had suffered personal discomfort and inconveniences in its use and occupancy in many ways, by reason of the construction and maintenance of the plaintiff's railroad and certain shops on premises adjacent thereto, for which judgment against the plaintiff was prayed in the sum of $5,000.

The necessity for the taking of the property was found by the court, upon the admission of the defendants, and thereupon the case proceeded by trial to a jury as to the other is-

sues involved. A great deal of testimony was given at the trial in support of the defendants' counterclaim for damages. On the question of the value of the premises taken the testimony was brief. At the conclusion of the testimony the plaintiff moved for and was granted a nonsuit as to the issues involved under the defendants' counterclaim for damages. Upon the question of value of the premises taken the jury thereafter returned a verdict of $4,000 in defendants' favor, upon which judgment was duly entered. Motion for a new trial was made and denied. Both parties appeal.

For convenience we shall first consider the defendants' cross-appeal, taken from the dismissal of the counterclaim for damages, and certain rulings of the trial court with respect to the admission and rejection of certain testimony. As pointed out, the alleged injuries for which defendants sought damages under their counterclaim arose long before plaintiff commenced its action to condemn. As we view the testimony offered in support of the issues involved under the counterclaim, it had no bearing whatever upon the question of the value of the premises, the only issue to be tried in the case after it was conceded that the taking of the property was necessary for plaintiff's use. This was not a case in which other property than that taken was injuriously affected. The defendants owned no other property in the same locality. The wrongs complained of by defendants did not grow out of the cause of action sued on by plaintiff. They did not constitute a legal defense, nor did they in the remotest degree meet the requirements of Comp. Laws Utah 1917, section 6576, prescribing when a counterclaim may be interposed. The counterclaim had no place in the case, and therefore the ruling of the district court dismissing it must be sustained.

The plaintiff's assignments of error go to the admission and rejection of certain testimony, the giving and refusal to give certain instructions to the jury, and the overruling of plaintiff's motion for a new trial. Some twenty-two of the plaintiff's assignments of error are directed to testimony bearing on the questions raised by defendants'

counterclaim, which, at the conclusion of the testimony, was dismissed on plaintiff's application. The plaintiff complains that this testimony, nevertheless, was highly prejudicial, in view of the fact that the court failed to specifically charge the jury that they were to disregard this testimony in passing on the only question submitted for their consideration, namely, the market value of the property taken. In fairness to the trial judge, we do not think the plaintiff's contention in this particular can be sustained. While the court did not specifically charge the jury not to consider this testimony, it did charge the jury that—

"The only question for you to determine in this case is the market value * * * of the lot, together with all the improvements appurtenant thereto."

If the plaintiff desired more specific instructions than given by the court, it became the duty of the plaintiff to frame and present them for the court's consideration. This the plaintiff did not do. It is true the plaintiff did request that an instruction be given directing the jury to find the issues under the counterclaim for the plaintiff, "No cause of action;" but the defendants' counterclaim was then out of the case—dismissed from further consideration by either court or jury—on the plaintiff's application. Not having made a written request to the court to charge the jury in the particulars complained of, the court's failure to do so will not be regarded as error. Comp. Laws Utah 1917, section 6803.

Bearing on the question of just compensation for the property taken, the defendants produced but two witnesses in their behalf—Lydia Schramm, one of the defendants and a part owner in the property, and Charles F. Watkins. Objections were made by the plaintiff as to the qualifications of these witnesses to give an opinion as to the market value of the premises on February 21, 1918, the date of the commencement of the action. The witness Schramm testified in substance that she had resided on the premises all her life; that she had made frequent inquiries of people who wanted to sell property in the city of Payson, both before and after the commencement of plaintiff's action; that she had been interested in friends

buying and selling property and in noting property values; that "we had offers to sell; there were people wanting to buy before the interurban (plaintiff) came." The witness was then asked by her counsel if she had an opinion as to the market value of the premises on the date of the commencement of the action, and, after stating that she had, the court, over plaintiff's objection, permitted her to testify that its market value was from $6,000 to $7,000.

In cases like the one under consideration the qualification of witnesses to express an opinion as to market value necessarily is a question to be largely determined by the trial judge. If it is shown that the witness is competent to express an opinion as to values, no matter what the source of the qualifying information may be, he should be permitted to testify. The sources of the witnesses' information may vary according to the peculiar means or opportunity the witness has of forming an opinion and judging the premises. We do not think any good reason can be assigned why a person who has occupied and used the premises all her life, and has been interested and alert in making inquiry as to its value, may not be as well qualified to speak as the banker, lawyer, or real estate man, having more or less to do with the sales and transfers of real property. The means and extent of the knowledge of any witness may be gone into on cross-examination, and rebutted by the testimony of other competent witnesses, whose opinions may differ as to value. No rule can be formulated for determining the means by which a witness shall acquire the necessary knowledge to qualify him to speak that will apply in all cases. If, under all the circumstances, he was in a position to obtain knowledge and form a correct judgment as to values, whether or not by buying, selling, leasing, or using the property for purposes for which it is adaptable is immaterial, so long as the jury is given the benefit of the facts upon which the opinion of the witness is based. *Salt Lake Inv. Co.* v. *O. S. L. R. Co.*, 46 Utah, 203, 148 Pac. 439; *Montana Ry. Co.* v. *Warren*, 137 U. S. 348, 11 Sup. Ct. 96, 34 L. Ed. 681; 2 Lewis, Eminent Domain (3d Ed.) section 656.

What has been said also applies to the qualifications of the

witness C. F. Watkins. This witness, with respect to his qualifications, testified that he was a resident of Salt Lake City; a contractor and builder by occupation; had constructed buildings, public and private, in various parts of the state of Utah; several hundred private residences in Utah county, among them two residences and a bank building in Payson; had estimated and compared values of real property for business and manufacturing purposes; made inquiries in different towns for the purpose of making estimates on properties; familiar with the defendants' property; known it since 1891; recently examined it; that it was part of his business to be posted as to values, and that he then had an opinion as to the market value of defendants' property, considering its size and dimensions, its location with reference to streets and railroad, trackage location, and the uses for which it is suitable. He then testified that the reasonable market value of the defendants' property on February 21, 1918, was $6,000. We do not think the trial court erred in permitting these witnesses for the defendants to testify as to market value.

The plaintiff's witnesses, four in number, testified that the fair market value of the premises taken was from $1,500 to $1,650. W. H. Ray, a real estate broker for many years and of wide experience in the lending of money, buying and selling real property throughout Utah county, who knew the defendants' property, and was familiar with its adaptability for any uses it might be put to, and acquainted with its conditions and improvements on February 21, 1918, placed the market value at $1,500. R. A. Porter, an attorney, who had resided at Payson for eleven years preceding the commencement of plaintiff's action, and who had attended to the business of others at Payson in the transfer of property there upon sales being made, who had observed the valuations and prices for which property had been sold in Payson, testified that the market value of defendants' property was $1,650. John W. Prows, also a resident of Payson, and engaged for five years last past in the real estate business, who was acquainted with values of real property in Utah county, particularly in Payson, and who had carefully examined the defendants' prop-

erty, places its market value at $1,600.   T. H. Wilson, Jr., a
resident of Payson for the past fifty-eight years, a farmer,
merchant, and banker of wide experience, who had personally
bought and sold real property, and knew of sales by others
having been made in Payson during his residence there, testi-
fied that he had known the defendants' property all his life,
passed it three times a day for twenty-five years, and that its
market value in February, 1918, was $1,500.   The jury re-
turned a verdict for $4,000.

Much complaint is made by the plaintiff of the ruling of the
trial court in denying plaintiff's motion for a new trial, par-
ticularly on the grounds of excessive damages and the insuffi-
ciency of the evidence to support the verdict.   We have here-
tofore remarked that in our opinion the witnesses for the
defendants were, in view of the testimony offered and re-
ceived, qualified to speak upon the question of market value.
The plaintiff complains, however, that the answer of the de-
fendants' witness Watkins as to market value was erroneously
predicated on the meaning of "market value," as defined to
be "the price the party who wanted to buy would give in cash
for the most advantageous and valuable use, excluding, how-
ever, railroad purposes," and particularly so in view of the
court's charge to the jury on the question of market value.
In this same connection the plaintiff tendered to the trial
court a request that the jury be instructed that "market
value" is defined to be the price the property "would bring
when it is offered for sale by one who desires, but is not
obliged, to sell it, and is bought by one who is under no neces-
sity of buying it," which the trial court refused to
give.   While we think that "market value," as defined       5, 6
in the plaintiff's request, refused, is the preferable defi-
nition, yet we think the definition as given by the trial court's
instruction embodies the same elements and was predicated on
substantially the same principles.   The term "market value"
has been variously defined by the courts in this class of cases.
As defined by counsel in propounding the questions to the
witness Watkins, the rulings made in the following cases were
substantially adhered to:   *Board of Education* v. *Corning*

(Sup.) 175 N. Y. Supp. 278; *Missouri, K. & T. Ry. Co.* v. *Roe*, 77 Kan. 224, 94 Pac. 259, 15 L. R. A. (N. S.) 679; *N. Pac. & M. Ry. Co.* v. *Forbis*, 15 Mont. 452, 39 Pac. 571, 48 Am. St. Rep. 692; *Chicago, D. & C.-G. T. J. R. Co.* v. *Simons* 200 Mich. 76, 166 N. W. 960; *Reclamation Dist. No. 730* v. *Inglin* (Cal. App.) 160 Pac. 1099. See, also, 2 Lewis, Eminent Domain (3d Ed.) sections 706, 707.

The plaintiff complains of the court's charge to the jury that in passing on the question of market value they should "take into consideration the existing business or wants of the community." The principal objection urged by plaintiff against the instruction is that there was no evidence upon which to base it, and therefore it left the jury to enter the realm of conjecture and speculate as to what the existing business or wants of the community were. As we read the record there was ample testimony upon which to predicate the instruction. It appears that the city of Payson has a population of several thousand people; that it is surrounded by valuable agricultural districts to support manufacturing and business enterprises in general, some of which are specially referred to in the testimony of the witness Watkins and made mention of by other witnesses. The instruction, in our opinion, correctly stated the law under the circumstances and conditions in the record.

We find no prejudicial error bearing on the questions raised by plaintiff's assignments, neither as to the admission or exclusion of testimony, nor in the giving or refusal to give the instructions complained of by plaintiff. We are also of the opinion that the trial court rightly denied plaintiff's motion for a new trial. While the plaintiff's witnesses and those for the defendants greatly differed as to the proper amount of damages for the taking of the property, after all it was for the jury and not the court to determine from all the testimony its real market value.

Lastly, the plaintiff assigns as error the allowance of interest by the court on the damages awarded defendants by the jury from the date of the commencement of the action, instead of from the date of occupancy by the plaintiff. The action

was commenced by filing of complaint in the district court February 21, 1918. Order was made granting right of immediate possession of premises pending condemnation proceedings April 28, 1918. Trial was concluded, verdict rendered, and judgment entered January 30, 1919. Under authority of *Oregon S. L. R. Co.* v. *Jones,* 29 Utah, 147, 80 Pac. 732, in which the question of interest upon the amount of damages assessed for the taking of the property in this class of cases was ably and exhaustively discussed by **8** Mr. Justice STRAUP, and in which it was held that in our jurisdiction interest should not be computed from date of commencement of the action, but rather from the date of the order of occupancy, which in this case would be April 29, 1918, this assignment of error is well founded. The above case is controlling, and should have been followed; therefore the trial court erred in allowing interest from the date of the commencement of the action.

For the reasons heretofore assigned, it is now ordered that the judgment of the district court of Utah county on verdict awarding damages in the sum of $4,000 be modified to the extent only of allowing the defendants interest thereon from April 29, 1918, and that in all other respects the same, including the order dismissing defendants' counterclaim, is affirmed. Defendants to recover costs of printing their brief on the main appeal, not including cost of printing abstract or brief on cross-appeal.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.