[Civ. No. 22891.   First Dist., Div. Three.   Jan. 31, 1967.]

PROFIDIO GASPAR, Plaintiff and Appellant, v. GEORGIA PACIFIC CORPORATION et al., Defendants and Respondents.

Smith, Parrish, Paduck & Clancy, Thomas Schneider and William Shannon Parrish for Plaintiff and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert A. Seligson and John J. Corrigan for Defendants and Respondents.

DEVINE, J.*—Plaintiff appeals from judgment for defendants on the proposition that a conditional res ipsa loquitur instruction was refused.

Plaintiff was employed by Loop Lumber Company in Alameda. He was helping to unload lumber from a flatbed car when an 8-by-8-inch board fell from the car onto his foot and destroyed his toes. Plaintiff sued Georgia Pacific Corporation, which loaded the lumber at Springfield, Oregon, on the proposition that the loading was negligent, particularly in that the bearing pieces, which underlay, crosswise, the heavy load, were not long enough, so that several inches of width of certain timbers overhung the bearing pieces and, when the supporting stakes were removed, the timbers did not have an adequate base, and fell. The action against Southern Pacific Company is based mainly on asserted faulty inspection of the load at several points on the journey from Oregon to Alameda, no defect having been observed. It is not asserted by appellant that the evidence in favor of each defendant would not justify the verdict that was awarded each defendant. There was testimony by Georgia Pacific that the lumber was not dangerously loaded, and by Southern Pacific that adequate inspections were made. As to alleged contributory negligence of plaintiff, there is nothing to establish either plaintiff's or defendants' position as a matter of law, and as there

*Assigned by the Chairman of the Judicial Council.

was no interrogatory to the jury on this subject, we cannot say that the verdict was based on contributory negligence rather than on failure of plaintiff to prove causative negligence on the part of either defendant. Defendants, asserting negligence of Loop Lumber Company, brought Loop's workmen's compensation carrier into the case in order to prevent recovery by the carrier under the theory of *Witt* v. *Jackson*, 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]. Loop Lumber Company was found by the jury, in answer to a special interrogatory, to have been negligent, and the negligence was found to have been a proximate cause of plaintiff's injury. This finding cut off the insurance carrier from recovery, but it does not rule out the possibility of negligence of either or both of the defendants as a concurrent cause. But the activities of Loop Lumber Company in unloading the car are important in considering the subject of res ipsa loquitur.

Southern Pacific turned over the car to Loop Lumber on Loop's "team track" (so named from the days when horse-drawn trucks were used in unloading). Two Loop employees, plaintiff and Morales, proceeded to the unloading. Morales operated a forklift; plaintiff helped in guiding, in removing dunnage and metal bandings around the load, and in like jobs. Morales testified that the forklift was "an old piece of junk" which was designed to lift 14,000 pounds, but could lift only 8,000 to 10,000 safely. The "units" of lumber which had to be unloaded appear to be in excess of 12,000 pounds; from which it was argued by defendants that there was likelihood that the lower timbers were disturbed or "raked" while the upper ones were being removed by Loop's employee, Morales. Morales testified that he noticed that the bearing pieces were short, that he feared timbers would fall, and that he warned appellant (which appellant denies). Morales had received no instructions about supporting the load after removal of the stakes, though, he testified, such supporting would have been possible and, he said, this would have been good practice. There were no safety meetings at Loop. The stakes were removed either by pushing them upwards out of their holes by the forklift, or by jabbing the fork into the stakes and raising them. A loading instructor for Southern Pacific, Richards, testified that when "they [Loop's men] took the top portion of the load off, that is a cinch to shake up the rest of it." After all of the top units had been removed, and as Morales moved the forklift toward the car to get one of the bottom units, an outside bottom tier of lumber fell from

the car and one piece struck appellant. He was walking alongside the car about five or six feet from it.

This recital has been given, not to show that Loop was negligent as a matter of law, nor that the affirmative answer to the interrogatory about Loop's negligence would insulate defendants from any negligence on their part (which, if existent, might have remained as a concurring proximate cause), but simply to show that the question of negligence of Loop surely was a fact to be reckoned with when the problem of control was presented in respect of res ipsa loquitur.

At first, appellant proffered the unconditional res ipsa loquitur instruction, but this was refused; and appellant makes no contention on appeal that it should have been given. When the court was about to discuss with counsel the subject of res ipsa loquitur, in relation to instructions, counsel for appellant suggested that the discussion be off the record (apparently, just for convenience). After the trial, counsel proposed that there be a partial settled statement in which it would appear that appellant had proposed, orally, a conditional res ipsa loquitur instruction, and that the court had said that a res ipsa loquitur instruction would not be given.

There was a racking of memories by judge and lawyers at the post-trial conference, and at the end, the judge made this settled statement part of the record: "The Court, in accordance with Rule 7, settles the statement as follows: That attorney for plaintiff, on December 16, 1964, in open court, during a discussion between the Court and counsel, did offer to prepare a conditional res ipsa loquitur instruction which would require the jury to make certain findings of fact before it would apply the doctrine of res ipsa loquitur. That the Court indicated it felt that it would not give any instruction on the doctrine, regardless of how it was prepared." Respondents argue that we should hold that res ipsa loquitur could not possibly apply to the state of facts. But we prefer to base our decision on narrower ground. We hold that appellant did not satisfy the requirements for presenting instructions, and that the deficiency was not excused by the judge's statement at trial, as quoted above.

Written instructions must be submitted. (Code Civ. Proc., § 607a.) On appeal, a party cannot predicate error on the refusal to give an instruction unless the proposed instruction is made part of the record. (*Thomas* v. *Laguna*, 113 Cal.App.2d 657, 660 [248 P.2d 929]; *Alexander* v. *McDonald*, 86 Cal.App.2d 670, 671 [195 P.2d 24].)

But appellant asserts that there is an exception to the above rules when the judge has said that he would not give an instruction on a subject such as res ipsa loquitur, because the law does not require idle acts. Appellant cites *Lane* v. *Pacific Greyhound Lines*, 26 Cal.2d 575 [160 P.2d 21], in which it was held that, where the judge had ruled repeatedly (and erroneously) during the trial that certain declarations of an employee were not admissible against his employer and had repeatedly instructed the jury to that effect, appellant had not waived the error by failing to request that the jury be instructed that the declarations were admissible. The case is obviously distinguishable. ▮▮▮ The court in our case had not given erroneous instructions contrary to the proposed one, nor had it made a completely firm and specific ruling. The judge states, in the settled statement, that he ''felt'' he would not have given a res ipsa loquitur instruction. But he did not have the opportunity of seeing what might have been prepared by appellant's counsel, nor have we. If one or more acceptable written instructions could have been prepared and had been prepared, perhaps the court, on examination and reflection, would have given them. The trial court and this court would have known exactly how appellant wished the jury to be informed.

There is a case (not cited in the briefs), *Hudspeth* v. *Jaurequi*, 234 Cal.App.2d 526 [44 Cal.Rptr. 428], in which judgment for defendant was reversed where plaintiff's counsel had tendered the standard res ipsa loquitur instruction at the outset, but later orally requested a conditional one, which was refused on the judge's view, erroneous as decided on appeal, that plaintiff had introduced evidence of specific acts of negligence. But this case, besides being very liberal toward the appellant, is readily distinguishable from the one before us. The trial judge's refusal in *Hudspeth* was an outright rejection of the whole proposition of res ipsa loquitur on an erroneous theory. The judge in our case made no such specific ruling on a stated theory. But more than this, the oral instruction in *Hudspeth* no doubt was relatively simple. This was a rear-end case, in which plaintiff contended that her car was stationary, after a gradual stop, but defendant contended plaintiff's car stopped suddenly. The terms of the oral instruction of conditional or informative res ipsa loquitur would not have been difficult for the trial court to construct, mentally, or for the appellate court to recognize and to deem the trial judge to have recognized at the time of his ruling.

In the case at bench, an instruction, if possible at all, would have been difficult to contrive. There are two defendants whose actions were successive, and a third party in control which could not be made a defendant because it was appellant's employer. This factor of successive parties distinguishes the case from those in which res ipsa loquitur is applied against two (or more) defendants but the responsibility of one derived from that of the other, or there was joint control of the instrumentality which was the occasion of the injury. (See McCoid, *Negligence Actions Against Multiple Defendants,* 7 Stan.L.Rev. 480.) In *Poulsen* v. *Charlton,* 224 Cal.App.2d 262 [36 Cal.Rptr. 347], cited by appellant, it was held error for the judge to have ruled out res ipsa loquitur (the case was tried without a jury) where the single act was done while all of the defendants, owners and contractors alike, had joint control of the premises as a matter of law (p. 268). But this was not so here.

Again, the case is not of the class exemplified by *Ybarra* v. *Spangard,* 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], a class recognized as special (p. 494), wherein a patient, while unconscious, is in the care of a number of persons.

It does not appear clearly whether appellant would have requested the instruction against Georgia Pacific only, or against Southern Pacific also, but in either case, it would have been necessary for the instruction to have excluded mishandling of the load by anyone other than any defendant against whom it was directed. (*Trust* v. *Arden Farms Co.,* 50 Cal.2d 217, 220 [324 P.2d 583]; *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 691-692 [268 P.2d 1041]; *Hammerschmidt* v. *Ford Motor Co.,* 192 Cal.App.2d 3, 7 [13 Cal.Rptr. 274].) As between Georgia Pacific and Southern Pacific, this would have presented at least a problem of composition. But a more serious aspect is this: Appellant, it would seem, did not and still does not regard the activities of Loop Lumber Company in the unloading as requiring such exclusion, for appellant says in his brief that "there was no evidence that Loop Lumber so treated the load that it was caused to fall." The recitation above of the actions of Loop Lumber gives ample evidence for the jury to find that the load was negligently handled by that company. What would the proposed instruction have said? We cannot presume that it would have met the delicate balancing of factors required in this field of law. If we were to accept the contention of appellant's counsel, he would escape the result of possibly erroneous or incomplete

drafting, namely, loss of the point on appeal. (*Mapes* v. *Yowell*, 54 Cal.2d 231 [5 Cal.Rptr. 159, 352 P.2d 527, 87 A.L.R.2d 536] ; *Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d 153, 158 [323 P.2d 391] ; *Davis* v. *Johnson*, 128 Cal.App.2d 466, 473 [275 P.2d 563].)

Moreover, appellant would put the Court of Appeal to the task of drafting instructions as perfectly as possible in appellant's behalf, and then matching these with the facts and the law, in order to decide if there were error. Counsel is not entitled to these benefits merely because of the rather general ruling of the trial judge. It has been suggested by counsel for appellant that to have pressed his point by offering written instructions following the ruling would have shown a lack of deference toward the judge. But respectful insistence upon a point, especially if a more specific ruling be requested (here, a ruling on a prepared instruction), shows no lack of deference. Besides, counsel must make his record for the Court of Appeal at the risk of a measure of annoyance to the trial judge.

Finally, we cannot say that refusal of the imagined instruction was prejudicial. It is possible that in order to meet the exacting requirements of a res ipsa loquitur instruction where, there being multiple handlers of the instrumentality, the factor of control must be so carefully defined, appellant would have had to produce an abstruse explanatory charge which would weaken rather than fortify his case. The fact that the case was lost does not show otherwise. There was ample reason for the jury's verdict, approved by the judge on motion for new trial.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 29, 1967.