STATE of North Dakota, Plaintiff
and Appellee,

v.

Debra K. MARKS, Defendant
and Appellant.

Cr. No. 890276.

Supreme Court of North Dakota.

March 1, 1990.

Schoppert Law Firm, Minot, for defendant and appellant; argued by Thomas K. Schoppert.

Merle A. Torkelson (argued), States Atty., Washburn, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

This is an appeal by Debra K. Marks from a conviction in McLean County Court of driving while under the influence of intoxicating liquor in violation of section 39–08–01 of the North Dakota Century Code. We affirm.

In the early morning hours of January 15, 1989, Officer Ricky Richard of the

North Dakota Highway Patrol stopped a vehicle for speeding on U.S. Highway 83 in the vicinity of Underwood, North Dakota. The driver did not produce a driver's license, but was identified as Debra K. Marks, the appellant in this case. Officer Richard detected a strong odor of alcohol on Marks' breath and noticed that her eyes appeared glassy and dilated. He asked her to come back to his patrol car for further evaluation and to show her the radar clocking. He attempted to conduct the nystagmus eye gaze test until he learned that Marks had a natural nystagmus in her right eye. Marks correctly recited the alphabet and properly performed a sequence of counting. Because Marks indicated that she had a previous back and neck injury, she was not required to do any physical tests. Marks was then placed under arrest and taken to the Turtle Lake Community Hospital for a blood test. The test showed a blood-alcohol concentration of 0.18 percent by weight.

A jury trial was held on July 12, 1989. Marks was found guilty of driving while under the influence of intoxicating liquor in violation of section 39–08–01, N.D.C.C.[1] On July 18, 1989, Marks filed a motion for a new trial supported by brief and accompanying letter requesting an opportunity for oral argument. The matter was scheduled for oral argument on August 22, 1989.[2] An order denying motion for new trial was entered on August 22, 1989, along with a judgment of conviction. Marks appealed to this Court from the judgment of conviction.

On appeal, Marks contends that the prosecutor made an improper comment at trial which shifted the burden of proof to the defendant, thus depriving her of a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and equivalent state constitutional provisions, and that Marks was not allowed to submit instructions at the close of evidence or at an earlier time during the trial pursuant to Rule 30 of the North Dakota Rules of Criminal Procedure.

■ During the trial, Marks attempted to challenge the validity of the results of the blood test. The blood testing procedures used by the State Toxicologist's Office and the specific process used in this case were testified to by Daniel Pederson, a chemist from the Office of the North Dakota State Toxicologist. During closing argument, counsel for Marks repeatedly attacked the qualifications, knowledge, education, and expertise of Pederson. He also attacked the method used at the State Toxicologist's Laboratory in preparing the vials used for the blood testing and in the analysis of the preservatives used in the process. During final rebuttal, the prosecution responded by saying:

"Now, you also heard Mr. Pederson testify that they normally get at least ten milliliters of blood, in fact, in this case, they got eleven milliliters of blood. However, not all of that was used to conduct the test. There was some leftover. If Mr. Schoppert was so sure that there was something wrong with the way that Mr. Pederson did that test, he could have obtained part of what was left—."

Upon objection by defense counsel, the following colloquy occurred:

"MR. SCHOPPERT: Your Honor, I'm going to object to that and may I approach the bench?

"THE COURT: Yes, you may.

"(Discussion at the bench out of the hearing of the jury both counsel present)

1. Marks was charged in the alternative with subsections (1)(a) and (1)(b) of section 39–08–01, N.D.C.C., which read:

"1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
   a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.
   b. That person is under the influence of intoxicating liquor."

2. Marks appeared with counsel on August 22, 1989, for oral argument and advised the court that she had nothing further to add and would rely on her brief. The State then indicated it would also rely on its brief.

"MR. SCHOPPERT: This is an illegal shift of the burden of proof of the case to the defendant. I move for a mistrial. It's improper for the prosecution to state that. We don't have to test anything. That is an illegal shifting of the burden of proof in this case.

"MS. TORKELSON: No it's not. It's merely stating the burden.

"THE COURT: Overruled. You may proceed."

The prosecution continued with final rebuttal and Marks made no further mention of the alleged illegal shifting of the burden of proof until her brief in support of her motion for a new trial. On appeal, Marks contends that the statement made by the prosecution was an illegal shift of the burden of proof to the defendant akin to a comment on a defendant's failure to call witnesses. Counsel for Marks argues:

"The prosecutor in this case employed a procedural tactic by alluding to an 'empty chair' which is improper prosecutorial conduct. This tactic generally concerns the rule that the prosecutor may not comment on the defendant's failure to call witnesses or produce any evidence. See *State vs. Taylor* 425 A.2d 1231 (Rhode Island, 1981) *Taylor* refers to the case of *State vs. Carson* [sic *Caron*] 300 Minn. 123, 218 N.W.2d 197 (1974) which sets forth the reasons why the prosecutor may not comment on a defendant's failure to call witnesses. It might suggest to the jury that the defendant has some duty to produce witnesses or that he bears some burden of proof. And, it might suggest [to] the jury that he did not call a witness because the defendant knew their testimony was unfavorable, i.e. the defendant did not test the sample because he knew it would be unfavorable. See also *State vs. Parker* 417 N.W.2d 643, 647 (Minn.1988). A proper objection was timely made in this case which preserves the record."

In response, the State argues that the allegedly improper statement was "invited" by Marks' attack on the aptitude of Pederson and on the methods employed by the Office of the State Toxicologist. The State also asserts that it was natural for it to remark on a theory which, despite a lack of any evidence to support it, was advanced by Marks, citing *State v. Rickel*, 69 N.D. 329, 286 N.W. 895 (1939).

In *Rickel*, the State, in rebuttal, made a statement to the effect that a witness, whose name the State had endorsed upon the information, was in California at the time of the trial, and, therefore, was unable to testify. Counsel for the defense objected to the statement, claiming that "it is not properly a matter for argument, there being no evidence offered on the subject nor explanation made of it prior to the State closing its case." However, this Court noted that defense counsel had mentioned to the jury that the State had not called two witnesses to testify. We said:

"If the counsel for the defendant attempted in his argument to the jury to make a point of the fact that a witness whose name was endorsed upon the information was not called to testify, it was natural for counsel for the State to remark that the witness was in California and could not be present. No harm has been shown even if the remark should not have been made. It was an explanation invited by the defendant himself. No prejudicial error has been shown thereby."

*Rickel*, 286 N.W. at 898.

In a more recent case, *State v. Schimmel*, 409 N.W.2d 335 (N.D.1987), the State, in closing argument, commented on the defendant's financial status. The defense objected that the comments were prejudicial and thus denied the defendant of a fair trial. We said:

"The state's attorney's comments about Schimmel's economic status and wealth were clearly in response to defense counsel's portrayal of Schimmel as a simple, unsophisticated man without much in the way of money. Because Schimmel invited this response by the state's attorney, he may not argue that these comments deprived him of a fair trial. *See, e.g., Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Young, supra*, at 1044–45 [*Unit-*

ed States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) ]. To be prejudicial, absent a fundamental error, improper closing argument by the state's attorney must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence. State v. Loyland, 149 N.W.2d 713, 731 (N.D.1967). 'He is allowed a wide latitude of speech, and must be protected therein. He has a right to be heard before the jury upon every question of fact in the case, and in such decorous manner as his judgment dictates. It is his duty to use all the convincing power of which he has command, and the weapons of wit and satire and of ridicule are all available to him so long as he keeps within the record.' Loyland, supra, at 731, quoting from State v. Gibson, 69 N.D. 70, 103, 284 N.W. 209, 225 (1939). Therefore, because Schimmel invited the state's attorney's argument, we do not believe that the comments by the state's attorney about Schimmel's economic means were improper and Schimmel was not prejudiced by them."

Schimmel, 409 N.W.2d at 342–43.

In the case at hand, Marks' main defense at trial was the lack of reliability of the blood-alcohol test and of the blood-alcohol testing procedures employed by the Office of the State Toxicologist. Marks had no evidence to support her contentions other than the testimony elicited from Dan Pederson on cross-examination. In light of the attack made by defense counsel, we believe that the response was almost predictable and as invited we conclude as in Schimmel that the comments were not improper and certainly were not prejudicial.[3]

In addition we are not convinced that the remarks of the prosecution in this case rise to the level or are equivalent to the remarks in the two Minnesota cases cited to us by Marks, State v. Caron, 300 Minn. 123, 218 N.W.2d 197 (1974) and State v. Parker, 417 N.W.2d 643 (Minn.1988). In Caron, the prosecutor commented on the defendant's failure to call certain alibi witnesses. The Minnesota Supreme Court found that the error, if any, was harmless. In determining which harmless error rule to apply, the court said:

"The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. That is, the more serious the misconduct, the more certain of its effect this court has felt that it should be before labeling the error harmless. Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. See, e.g., State v. White, supra [295 Minn. 217, 203 N.W.2d 852 (1973)], where this court applied the harmless-error-beyond-a-reasonable-doubt test in holding that defendant was entitled to a new trial because the prosecutor improperly introduced evidence of defendant's prior criminal record. On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict. See, e.g., State v. Prettyman, 293 Minn. 493, 198 N.W.2d 156 (1972), where this court applied the latter test in determining that defendant was not entitled to a new trial because the prosecutor expressed his personal opinion in his closing statement. [Footnote omitted.]"

---

**3.** Section 39–20–02, N.D.C.C., allows a person to conduct a test in addition to any administered at the direction of the law enforcement officer. The relevant part of that section reads as follows:

"The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged. The failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer."

*State v. Caron,* 218 N.W.2d at 200. The court, after applying the latter rule, found the error to be harmless.

In *Parker, supra,* the prosecutor commented on the defendant's failure to call certain witnesses. In noting that defense counsel did not object or make any attempt to cure the error by addressing the statement effectively in closing argument or by requesting curative instructions, the court again applied the less stringent of the two rules enunciated in *Caron.* The court said:

> "In this case we conclude that even if the prosecutor's statements were deemed to have been improper, the impropriety was harmless and nonprejudicial. The state's evidence of guilt of the two offenses of which defendant was found guilty was overwhelming, and the defendant's explanation for his very high blood alcohol level was incredible. We are convinced that the jury would have credited the state's evidence and rejected defendant's ludicrous explanation whether or not the prosecutor had made the statement in question."

*Parker,* 417 N.W.2d at 648.

Similarly, in the case at hand, we conclude that even if the prosecution's statements were deemed to have been error, it was harmless error. The State's evidence of guilt, the testimony of the arresting officer, and the 0.18 percent blood-alcohol results were sufficient to allow the jury to find Marks guilty beyond a reasonable doubt despite the alleged improper statement. Thus, under Minnesota standards, we cannot conclude that the alleged error likely played a substantial role in influencing the jury to convict.

■ Under North Dakota standards, the control and scope of opening and closing arguments is largely a matter left to the discretion of the trial court, and a case will not be reversed on the ground that the prosecutor exceeded the scope of permissible closing argument unless a clear abuse of discretion is shown. *State v. Schimmel,* 409 N.W.2d 335, 342; *State v. Mehralian,* 301 N.W.2d 409, 418 (N.D.1981). To establish an abuse of discretion, absent a fundamental error, the defendant must demonstrate that the prosecution's comments in closing argument were improper and prejudicial.

■ In *State v. Welch,* 426 N.W.2d 550 (N.D.1988), we dealt with the issue of whether or not a prosecutor's disclosure in his opening statement of an accomplice's conviction was prejudicial error requiring a new trial in light of the failure of the defendant to request a cautionary instruction. Upon mention of the conviction, defense counsel promptly objected and the objection was sustained. The prosecutor then continued with his opening statement. We agreed with the defendant that the prosecutor's statement concerning the conviction of the accomplice was clearly improper, but went on to say:

> "The defendant argues that the trial court should have granted a mistrial because the error was prejudicial. Error is prejudicial if it causes substantial injury so that a different decision would have resulted absent the error. *State v. Schimmel,* 409 N.W.2d 335 (N.D.1987); *See also* Rule 52(a), NDRCrimP. However, in order to properly preserve the question of prejudice for appellate review, counsel must ask the trial court to give the jury a cautionary instruction. *Andrews v. O'Hearn,* 387 N.W.2d 716 (N.D.1986); *Klein v. Harper,* 186 N.W.2d 426, 435 (N.D.1971). The failure to request an instruction waives the objection to the allegedly prejudicial statement. *See, e.g., State v. Padgett,* 410 N.W.2d [143] at 146; *State v. Janda,* 397 N.W.2d 59, 70 (N.D.1966); *State v. Knudson,* 21 N.D. 562, 567, 132 N.W. 149 (1911). Generally, a jury is presumed to follow the instructions provided by the court. *State v. Janda, supra.*
>
> \* \* \* \* \* \*
>
> "In this case, the prosecutor mentioned June Langan's conviction briefly and only during opening statement. The trial court sustained defense counsel's timely objection. Because the improper statement received very brief attention by the State in the context of the entire opening statement, and because our juries are presumed to follow jury instruc-

tions, we believe an instruction to disregard the statement would have removed any improper prejudice. We conclude therefore that counsel's failure to request a curative instruction waived the argument of prejudice. [Footnotes omitted.]"

*State v. Welch,* 426 N.W.2d at 553, 554.

Similarly, in the case at hand, while defense counsel objected to the statement, we have been unable to find any evidence in the record that he made a request for a curative instruction at that time. We note that the Minnesota Supreme Court has indicated that prosecutorial error is curable by corrective instructions. *See State v. Race,* 383 N.W.2d 656, 664 (Minn.1986); *State v. Caldwell,* 322 N.W.2d 574, 590 (Minn.1982); *Tucker v. State,* 309 Minn. 482, 489, 245 N.W.2d 199, 203 (1976).

In *State v. Kunkel,* 366 N.W.2d 799 (N.D.1985), this Court noted that jury instructions corrected an allegedly prejudicial statement made by the prosecutor during closing arguments. We said:

"The jury was told by the district court in preliminary instructions that statements and arguments of counsel are not evidence. Furthermore, in final instructions the jury was told

'that if during trial or in the heat of argument, counsel upon either side has made statements which are not supported by the evidence in the case, or if counsel have expressed their opinion or belief regarding any of the facts and issues in this case, it is your duty to wholly disregard such statements and to decide this case solely and exclusively upon the evidence and these instructions.'

Under these circumstances, and in light of the district court's findings, we find no grounds for granting post-conviction relief."

*Kunkel,* 366 N.W.2d at 803.

In the case at hand, the jury was instructed that arguments or other remarks of an attorney are not evidence. The jury was also told that the State had the burden to prove the essential elements of the offense beyond a reasonable doubt. Furthermore, as in *Welch,* the allegedly improper statement received very brief attention by the State in the context of the entire closing statement.

Having failed to ask for a curative instruction at the time of the allegedly improper statement and the overruling of the motion for a mistrial, we do not believe that Marks is in any stronger position than Welch was. Therefore, we conclude that the trial court did not abuse its discretion in denying a new trial based on the prosecution's allegedly improper statement.

Marks next contends that the trial court erred in not allowing her to submit instructions at the close of the evidence or at an earlier time during the trial and in not allowing her to make exceptions to the instructions. Rule 30(b), N.D.R.Crim.P., reads:

"(b) *Requested Instructions.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court may require that each instruction be written on a separate sheet, provided that North Dakota pattern jury instructions may be requested by reference to instruction number only. The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury. All instructions given by the court to the jurors must be read or given to them orally by the court without disclosing whether the instructions were requested."

In the notice of jury trial, the trial court requested that proposed jury instructions be submitted to the court at least ten days prior to trial. No written instructions or requests were submitted by Marks either before or during trial. Following closing arguments, the following colloquy occurred:

"THE COURT: Members of the Jury—

"MR. SCHOPPERT: [Counsel for Marks] Your Honor, may we approach the bench?

"(Discussion at the bench, both counsel present)

"MR. SCHOPPERT: We request time to settle the jury instructions.

"THE COURT: Pardon me?

"MR. SCHOPPERT: I would like to have time to settle the instructions.

"THE COURT: Denied.

"MR. SCHOPPERT: Okay. Can I make an offer of proof then?

"THE COURT: Proof? The instructions have been sent to you and they were available to you and you wait until now?

"MR. SCHOPPERT: All the evidence came about. We are entitled to have an opportunity to settle the instructions prior to them being given to the jury.

"THE COURT: Denied."

Marks asserts that Rule 30(b), N.D.R. Crim.P., allows her to submit and settle instructions at the time her counsel made that request, and given the opportunity, she would have: (1) submitted a cautionary instruction regarding the prosecution's comments on testing the blood and shifting the burden of proof; (2) objected to the weight and credibility instruction; and (3) requested the pattern jury instruction as to an expert witness.

Generally, each litigant in a case has the right to request instructions upon the issues of the case, *State v. Olson*, 356 N.W.2d 110, 114 (N.D.1984), and attorneys have the professional responsibility to request or object to specific instructions of points of law resulting from testimony or on developments during trial. *State v. Allery*, 322 N.W.2d 228, 232, n. 3 (N.D.1982).

In *State v. Olson, supra*, this Court addressed the issue of whether or not a trial court committed reversible error by not giving a jury instruction which was orally proposed to the trial judge after proposed instructions had been submitted. Olson appealed from a jury conviction of failing to immediately stop after colliding with an unattended vehicle and of failing to notify the operator or owner of the vehicle after the accident. During a discussion about jury instructions in chambers, defense counsel requested an instruction as to con-scious action. However, counsel did not offer a specific instruction on conscious action, but instead, requested the court to compose such an instruction. As a result, the court gave no instruction on conscious action. We framed the question presented as "whether or not counsel for Olson was obliged to submit a written jury instruction in order to have preserved Olson's objection for appeal." *Olson* at 114. In finding that the trial court had not committed reversible error, we said:

"If a defendant desires more comprehensive instructions on any phase of the case, he must submit written instructions with the request that they be given. *State v. Bowe*, 57 N.D. 89, 220 N.W. 843 (1928). If a party fails to make such a request he cannot predicate error upon omissions in the charge given. *Bowe, supra;* see also *Casper v. Spaulding*, 78 Idaho 282, 301 P.2d 1097 (1956); *State, Road Comm'n v. Kendell*, 20 Utah 2d 356, 438 P.2d 178 (1968); *Salt Lake & U.R. Co. v. Schramm*, 56 Utah 53, 189 P. 90 (1920). See, generally, 75 Am.Jur.2d, *Trial*, § 577, p. 562. Counsel will not be excused for failing to comply with a rule to present requested instructions in writing merely because the trial judge indicates in advance that he will not give the instruction requested. 75 Am.Jur.2d, *Trial*, § 580, p. 565; *Gaspar v. Georgia Pacific Corp.* 248 Cal.App.2d 248, 56 Cal. Rptr. 243 (1967). The reason for the requirement for written instructions is that a trial judge must be allowed an opportunity to examine the substance of the requested instruction in order to facilitate a proper ruling on that request. The desired result is a ruling by the trial judge that will allow the instructions to fully and accurately inform the jury of the applicable law. Additionally, by requiring requested jury instructions to be in proper form, we, as a court of review, will be able to determine from the record the correctness of the trial court's ruling.

"Here, counsel failed to tender a written jury instruction on 'conscious action.' In fact, counsel attempted to shift his duty of drafting a specific instruction on

conscious action to the judge. We hold that it was counsel's duty to draft a specific instruction on conscious action and to submit it to the trial judge. Because Olson did not submit a written jury instruction she may not predicate error upon the trial court's refusal to give the conscious-action instruction unless the trial court committed reversible error by so ruling."

*Olson* at 114.

In the case at hand, counsel for Marks asked to "settle the instructions" after closing argument. The trial court denied the request and counsel for Marks asked to make an offer of proof. That, too, was denied. In chambers, after the guilty verdict was rendered, the following colloquy occurred:

"MR. SCHOPPERT: [Counsel for Marks] It says here Requested Instructions Rule 30(b) 'At the close of the evidence or at any such time during the trial as the Court reasonably directs, any party may file written requests that the Court instruct the Jury on the law as set forth in the requests.' I thought I was right.

"THE COURT: Do you have your files here? May I see your written instructions?

"MR. SCHOPPERT: We would have reduced them to writing at that particular point. It's done all the time.

"THE COURT: And you have your portable typewriter and secretary right here to do it?

"MR. SCHOPPERT: It doesn't have to be in typewritten form. We could have put it in writing at that time.

"I think that that's the grounds of our Motion for New Trial. We were denied the opportunity to settle instructions prior to the preparation of the evidence.

"THE COURT: Very well."

Rule 30(b), N.D.R.Crim.P., permits the court to require written requested instructions. Marks did not submit written instructions to the trial court nor has she included any such proposed instructions in her filings to this Court. Marks' counsel did attempt to make an offer of proof as to the requested instructions, yet later admitted in chambers that he had no written instructions to submit to the court.

Rule 30(c), N.D.R.Crim.P., provides:

"(c) *Exceptions to Instructions.* The giving of instructions and the failure to instruct the jurors shall be deemed excepted to unless the court, before instructing the jurors, shall submit to counsel the written instructions which it proposes to give to the jurors and shall ask for exceptions to be noted, and thereupon counsel must designate the parts or omissions of the instructions as he may deem objectionable. Thereafter, only the parts or omissions so designated shall be excepted to by the counsel designating the same. All proceedings connected with the taking of exceptions must be in the absence of the jurors and a reasonably sufficient time shall be allowed counsel to take exceptions and to note the same in the record of the proceedings."

The State asserts that written instructions were submitted to counsel by the trial court, but that the court did not ask for exceptions to be noted during the trial, and thus concedes that all instructions given by the court were deemed excepted to and are appealable. In analyzing jury instructions, we have often said:

"Jury instructions must be considered as a whole, and if when so considered they correctly advise the jury as to the law, they are sufficient, although part of the instructions, standing alone, may be insufficient or erroneous."

*State v. Saul,* 434 N.W.2d 572, 576 (N.D. 1989).

■ We believe that the jury instructions were curative of the allegedly prejudicial statement made by the prosecution in that they said:

"Before the Defendant can be convicted, the State must prove each and every material allegation in the Complaint to be true to your satisfaction beyond a reasonable doubt.

\*    \*    \*    \*    \*    \*

"The Defendant is presumed to be innocent until the contrary, his guilt, is proved to your satisfaction beyond a reasonable doubt. If you have a reasonable doubt as to whether the guilt of the Defendant has been so proven, he is entitled to be acquitted.

\*      \*      \*      \*      \*      \*

"An attorney is an officer of the Court. It is his duty to present evidence on behalf of his client, to make such objections as he deems proper, and to argue fully his client's cause. However, the argument or other remarks of an attorney, except admissions and stipulations noted in the course of the trial, are not to be considered as evidence in this case.

"If counsel or I make any comments or statements concerning the evidence which you find are not warranted by the evidence, you should wholly disregard them and rely upon your own recollections or observation.

"If counsel make any statements as to the law which are not warranted by these instructions, you should wholly disregard such statements.

\*      \*      \*      \*      \*      \*

"The burden of proof resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

1) That on or about the 15th day of January, 1989 that the Defendant, Debra Marks, drove a motor vehicle upon a public highway, namely, North Dakota Highway 83, County of McLean, North Dakota; and

2) That at said time and place the Defendant, Debra Marks, was under the influence of alcohol; or,

3) That the Defendant, Debra Marks, had then a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving a motor vehicle."

■ In determining whether or not a trial court has committed error which warrants a new trial, we must consider the entire record and the probable effect of the action alleged to be error in light of all the evidence in order to determine whether or not substantial rights were affected. *State v. Allen,* 237 N.W.2d 154, 162 (N.D.1975). The error here (the trial court's failure to allow defense counsel to "settle" instructions), as we said in *Olson, supra,* does not involve Marks' constitutional rights, so it must appear that prejudice occurred, that substantial injury resulted to her case, and that a different decision probably would have resulted absent the error before we can reverse the jury's verdict. Even at this juncture we have not been informed how the instructions that were given were inadequate or misleading or prejudicial. We said in *Olson:*

"After reviewing the record we conclude that even if Olson was prejudiced by the trial judge's failure to instruct on the conscious-action issue, counsel's failure to make a proper request is controlling. If the trial judge had so instructed we cannot say that the jury would have found Olson not guilty. Although an instruction on conscious action was not given, counsel was free to argue and did argue to the jury that Olson was unconscious after the accident and could not conform to the requirements of the law. We believe that the issue of conscious action was presented fairly to the jury."

*Olson,* 356 N.W.2d at 115.

Similarly, in the case at hand, counsel's failure to properly submit proposed written instructions is controlling.

For the reasons stated herein, the verdict of the jury and the judgment of conviction of the county court are affirmed.

MESCHKE and GIERKE, JJ., concur.

VANDE WALLE, concurs in the result.

LEVINE, Justice (specially concurring).

I write specially to note my departure from that part of the majority opinion that holds that defendant's failure to request a curative instruction waived any argument of prejudice. I do not agree that defendant

was obliged to request a curative instruction in light of the court's overruling defendant's objection to the prosecutor's statement.

*State v. Welch*, 426 N.W.2d 550 (N.D. 1988), is inapposite. In *Welch*, the trial court sustained Welch's objection to the improper statement. Although Welch moved for a mistrial, he did not request a cautionary instruction. We concluded that the failure to request the curative instruction, under the circumstances, waived the argument of prejudice and the failure to give a curative instruction was not obvious error under the circumstances of the case. Underlying our analysis in *Welch*, as in all cases where a curative instruction is deemed necessary, are the unarticulated premises that if a statement is objected to and the objection is sustained by the trial court, then, because juries are deemed to follow the instructions given by the court, and because many errors are curable by cautionary instructions, and because trial courts are deemed willing to caution juries not to pay attention to improper statements, a curative instruction must be requested to preserve the issue of prejudice. In other words, when an objection to an improper statement is sustained, a request for a cautionary instruction is ordinarily a condition precedent for raising the issue of prejudice on appeal. However, it is sheer folly to expect that a trial judge, who has ruled that a remark is not improper and who has therefore overruled an objection to that remark, will nonetheless give a curative instruction that the jury is to disregard that remark. *See, e.g., Ralston v. State*, 555 So.2d 443 (Fla.Ct.App.1990). The law does not demand futile acts and neither should we. In my view, defendant did not waive any claim of prejudice by failing to ask for a curative instruction. The defendant's objection to the argument, overruled by the trial court, was sufficient to preserve the questions of both the propriety of the remark and its prejudicial impact. *Accord Hairston v. State*, 68 Md.App. 230, 511 A.2d 73 (1986).

I agree, however, that the trial court's error, if any, in overruling the objection was harmless under Rule 52(a), NDRCrimP. The instructions given by the trial court on the State's burden of proof and the abundant evidence in support of the verdict assure that the verdict would have been the same without the prosecutor's remark.

I, therefore, concur in the result as well as in the rationale for the holding that the trial court did not err in refusing defendant's offer of unwritten instructions.